RICHARD S. WARING et al., Respondents, *v.* THE INDEMNITY FIRE INSURANCE COMPANY, Appellant.

A policy of fire insurance taken out by commission merchants upon goods " sold but not removed,"—*Held*, to cover all goods which, having once belonged to the insurers, or having once been held by them on commission, had been fully sold and technically delivered, the title and the right of possession changed, but the articles not yet actually removed from the place of storage.

The law does not forbid that a policy should be so framed as that the insurance shall be inseparably attached to the property intended to be covered, so that successive owners, during the continuance of the risk, shall become, in turn, the parties really insured.

Agents, commission merchants, or others, having the custody of and being responsible for property, may insure in their own names, and recover of the insurer not only a sum equal to their own interest in the property, by reason of any lien for advances or charges, but the full amount named in the policy, up to the value of the property.

A person may insure in his own name the property of another for the benefit of the owner, without his previous authority ; and such insurance will inure to the party intended to be protected, if adopted by him, even after loss has occurred. It must be shown that insurance of the owner was the intention of the person effecting the insurance, when the contract was made, but such intention need not have fastened, at the time of entering into the contract, upon the very person who, when the contract matures, seeks to take the benefit of it. FOLGER, J.

Accordingly, where A, the owner of property, effected an insurance upon it, the policy containing this clause, " sold, but not delivered," and subsequently sold it to B, holding it for him without charge, and it was burned,—*Held*, that the risk followed the property, and that an action was maintainable by A for the value of the policy, in trust for B.

(Argued May 26th ; decided June 6th, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court, in the first judicial district, affirming the judgment of the New York circuit in favor of the plaintiff.

The plaintiffs were commission merchants, and brokers in petroleum and its products. They also bought and sold on their own account. To cover all their interests and those which they represented, they took such policies of insurance as were adapted to the various exigencies of their business, and the

necessities of the persons with whom they dealt. A part of their business was to sell petroleum for export, and it was an advantage to them in their business to have the property covered by insurance during the brief time between the sale of it and its removal from the bonded warehouse to the vessel. This saved a new insurance, which would be needed only for a few days. On the 13th day of September, 1865, the plaintiffs obtained in New York city eleven policies of insurance with as many different companies, in the aggregate $30,000. The written part of the policy was as follows: "Do insure Warring, King & Co. against loss or damage by fire to the amount of $3,000 on refined carbon oil and packages containing the same, their own, or held in trust on commission, or sold, but not removed, contained in bonded warehouse." * * * Subsequently part of the property was sold. The purchasers of the oil were informed by the plaintiffs that the property was covered by insurance until removed. No independent insurance was effected upon it. On the 8th day of October, 1865, there was a total loss by fire, the amount of property destroyed amounting to nearly the full face of the policies. All the companies, with the exception of the defendant and one other, paid their proportion of the loss. The plaintiffs sue for themselves in their own right, as well as on account of petroleum sold to different parties and paid for, but not removed, and which was destroyed at the time of the fire. This latter formed a large proportion of the loss. An exception as to admission of testimony is sufficiently stated in the opinion.

*Wheeler H. Peckham,* for the appellants.

*F. F. Marbury,* for the respondents, on the question of construction of policy. (*Pindar* v. *Kings County Ins. Co.*, 36 N. Y., 650; a stronger case than *Stilwell* v. *Staples,* 19 N. Y., 401; see also *Herkimer* v. *Rice,* 27 N. Y., 180; *Rolker* v. *Great Western Ins. Co.*, 3 Keyes, 17.) Property may be insured for the benefit of another not named in the policy. (*Herkimer* v. *Rice,* 27 N. Y., 179; *Stilwell* v. *Staples,* 19 N. Y.,

403; *Lee* v. *Adsit*, 37 N. Y., 86; *Watson* v. *The Monarch F. and L. Ins. Co.*, 5 Ell. & Black., 870.) As to construction of section 113 of the Code. ( *Walsh* v. *Wash'n Ins. Co.*, 32 N. Y., 427; *Siter* v. *Morse*, 13 Penn., 220; *Goodall* v. *N. E. M. and F. Ins. Co.*, 5 Foster, 169, 186; *Rogers* v. *The Traders' Ins. Co.*, 6 Paige, 596.) At the common-law, even if the contract was with persons having no interest at all, a contract of assurance was good. (*Dolby* v. *The India and London Life Ins. Co.*, 15 Com. B., 365, E. C. L. R., vol. 80; *Waters* v. *Monarch F. and L. Ins. Co.*, 5 Ellis & Black., 875, 879.)

FOLGER, J. Though there was a time, after the making of the policy, at which the property was covered by it, and the plaintiffs were insured by it, it must be conceded that when the property was destroyed by fire, the plaintiffs had no such interest in it, as that they suffered any immediate pecuniary loss. The proof is, that they had sold the oil and received their pay. The proof also is, that the oil was on store in a United States bonded warehouse, and that, by the delivery of invoices and gauger's certificates to vendees of the plaintiffs, there had been a complete delivery of the property to the vendees, according to the custom of the trade. Nothing more was to be done to it by the vendors to enable the vendees to remove it. But the place of storage had not been changed. It remained on store, where it had been deposited by the plaintiffs, without expense to the vendees. It was also testified (under the defendant's objection), that the plaintiffs, according to custom in Philadelphia, retained the possession of it. It is evident, that the plaintiffs had no property in the oil, nor any lien upon it for purchase-money, or any charges of any kind. But they did have the possession of it by the consent of vendees, and thus the right to possession as against all the world but the vendees.

Under this state of the facts, it is to be determined whether the contract of insurance may be so construed, either from its language, or from the surrounding circumstances, as that it can be determined that the defendants meant to continue the

risk taken upon this oil after it was sold and delivered by the plaintiffs; and, also, whether they meant to insure the pecuniary interest in it of any other persons than the plaintiffs.

We have but little difficulty in holding from the peculiar phraseology of the policy, that something other was meant than property, of which a contract of sale had been made, but of which no delivery had yet taken place. " Sold but not delivered," is a phrase common with insurance men, and has an ascertained and definite meaning. It applies to property of which a contract of sale has been made, but of which the ownership has not been changed by a delivery in pursuance of the contract. " Sold but not removed," is another, and we deem a newer form to express something else. We judge that it was meant to cover that which had been sold, and of which a legal, binding delivery had been made, the ownership and right of control of which had passed, but which had not been in fact removed, of which no change of place indicated a change of ownership and possession. It is easy to be seen, that it might be an advantage and a convenience to the plaintiffs to have a policy which would thus cover property, once theirs for sale, but after that sold and delivered and paid for. In the great rapidity, number and value of the transactions in such a commodity, in such a market, such an insurance would much facilitate the business of both parties, increasing that of the vendors and making safe that of the vendees. If the plaintiffs had a shifting policy, which would change with their daily transactions in the property, and cover it to-day as in the ownership of the plaintiffs, the next day as that held by them in trust or on commission, and the next as that of some complete vendee, who had not yet had the time or the occasion to remove it, much time, trouble, care and expense would be saved to customers, and thus would arise a persuasive inducement for dealers to become the vendees of these plaintiffs. Thus it is to be seen that the adoption of this phraseology, novel, and taking in property not theretofore or without it covered by the terms

of a policy, had a purpose on the part of the assured, one
which was voluntarily and intelligently acceded to by the
insurer.  For though the use of it increased in some degree
the burden upon the company, it could not have been by the
company inserted in the policy aimlessly, or without compre-
hension of its meaning.  I do not, from the whole written
description of the property to be covered by the policy, doubt
that such was its meaning.  It comes to this by natural steps.
The risk is taken " on refined carbon oil."  *First,* " their
own ; *i. e.,* that which the plaintiffs, during the term, held as
their own property, owned and possessed by them.  *Second,*
" held in trust;" *i. e.,* that of which they had the care and
custody, intrusted to them as representatives of others, and
for which they are responsible to the owner (*Stillwell* v. *Sta-
ples,* 19 N. Y., 401) ; and in this term may be included that
which they had sold but not delivered.  *Third,* " held on
commission ;" *i. e.,* that which they held, coming into or con-
tinuing in their care and custody for the purpose and with
the duty of sale.  *Fourth,* that which was " sold but not
removed," an additional phrase, not to be supposed a repeti-
tion of the meaning of the others, but to have been used as an
addition to their meaning, taking in that which, once having
been their own, or once having been held by them on com-
mission, had been fully sold and technically delivered ; the
title and the right of possession changed, but not yet removed
from that place of storage.  The phraseology comprehends
all this, and goes naturally and regularly, as expressive of a
well-formed intention to comprehend all, and to affix the
indemnity of the contract to the property in whatsoever of
these conditions it should be, and throughout them all.  And,
provided that there is some one in fact beneficially interested
in the policy as an assured, there is nothing contrary to the
policy of the law in intending and effecting such an insurance,
and it may be upheld.  For here is an actual subject of a
risk, and the proviso being met, there is a person who has an
interest in the subject, and is himself affected by the risk.
We have, then, here, a policy which did, in its inception, by

its terms, cover this particular property, and did designedly cover it. And we have a policy, by which it was meant by insurer and insured that the risk taken should cover and adhere to the same property, after it had left the ownership of the persons designated by name in it; by which, necessarily, it was also meant to follow and to cover that property in the ownership of the vendee of the original owner named in the policy. It is not forbidden by the law that a policy should be so framed as that the insurance shall be inseparably attached to the property meant to be covered, so that successive owners, during the continuance of the risks, shall become, in turn, the parties really insured. (2 Duer on Ins., 49, Lecture 9, § 31.)

But it remains to be seen whether this contract of insurance could be made or continued in the name of the plaintiffs for the benefit of their vendees not especially designated. It is laid down in broad terms that one may, in his own name, insure the property of another for the benefit of the owner without his previous authority or sanction, and that it will inure to the benefit of the owner upon a subsequent adoption of it, even after a loss has occurred. (Angell on Ins., § 79, cited and approved by DENIO, Ch. J.; *Herkimer* v. *Rice,* 27 N. Y., 163–81.)

In the edition of Angell which is before me (Boston, 1844), the authorities cited to sustain this proposition disclose some relation existing between the person who effected the insurance and was named in the policy, and the property insured, either as the agent for the owner or as the occupant of the property, or as having the care, possession and control of it, as bailee. Agents, commission merchants or others, having the custody of, and being responsible for, property, may insure in their own names; and they may, in their own names, recover of the insurer not only a sum equal to their own interest in the property by reason of any lien for advances or charges, but the full amount named in the policy up to the value of the property. In all such cases, the right to insure and the right to recover seem to be founded upon

the relation above adverted to. (See *De Forrest* v. *Fulton Ins. Co.*, 1 Hall Sup. Ct. Rep., 84; *Stillwell* v. *Staples*, 19 N. Y., 401; *Siter* v. *Motts*, 1 Harris Penn. St. R., 218.)

The right is put upon the fact, that having the possession of the property exclusive as to all but the owner, to whom they are responsible, they have the right to protect from loss, so that it or its value may be rendered to the owner when he calls for his own. Now there did in this case exist a relation between the plaintiffs and the property and its owner. Although it had been sold and paid for, and, in legal contemplation, delivered, its place of storage had not been changed. For the purpose of saving expense in storage, for the purpose also, it may be inferred from all the circumstances, of saving expense of a new insurance, it was left in the same warehouse, and by the custom of the trade, as is said, in the possession still of the plaintiffs. Thus was established that relation, which enabled the plaintiffs to prolong the defendant's risk upon the property. And although the vendees of the plaintiffs, the owners of the property, are not by name or peculiar mention designated in the policy, there are terms there, which have been held to bring within such a contract persons not named in it, but yet interested in the property insured, which may be done. (Phillips on Ins., 1 vol., p. 197, § 382; p. 202, § 388.) The phrases describing property " as held in trust," or " on commission," and kindred terms, in a policy to an agent, factor or the like, have been held as giving to the owner of the property a right to take the place of the insured, to adopt the contract, and to enforce it in his own name or that of his agent. (*Lee* v. *Adsit, supra; Stillwell* v. *Staples, supra.*) Some cases go farther than this, and hold that one may insure in his own name the property of another for the benefit of the owner, without his previous sanction or authority, and that it will enure to the party intended to be protected upon his subsequent adoption, even after a loss has occurred. (*Miltenberger* v. *Beacom*, 9 Barr. [Penn. St. R.], 198.) Of course, it must be made to appear that the owner was in the intention of the per-

son effecting the insurance when the contract was made. (1 Phillips on Ins., p. 198, § 383.) Such intention need not have fastened at the time of entering into the contract upon the very person, who, when the contract matures, seeks to take the benefit of it. Otherwise policies to commission merchants, warehousemen, factors and persons in the position of these plaintiffs, in which are clauses of this general nature, would be of little avail. For, obviously, it cannot be foreseen who will, in the course of the term of the policy, come into such relations with them. And it is to be assumed that every one was in the intention of the insurer, who subsequently with design takes such relations to him as brings him within the clauses of the policy. The intention must have been to effect insurance for any person and all persons who during the running of the policy, should have goods within its description of property insured.

And such intention, we hold, appears from the phraseology of this policy. Bunker Brothers were vendees of the plaintiffs, of property "sold but not removed." One of that firm was a witness upon the trial of the case. Nothing shows that they repudiate the contract made or continued for their benefit. And though the action is in the name of the persons named in the policy, their recovery will be in trust for Bunker Brothers. (*Stilwell* v. *Staples, supra.*)

Section 113 of the Code declares that the term "trustee of an express trust," as therein used, shall include a person with whom or in whose name a contract is made for the benefit of another, and permits an action on the contract to be brought in the name of the trustee. So this action is properly brought in that respect.

The exception to the admission of testimony was not well taken. The objection was to the question put, and this called for no more than the agreement of the plaintiffs and their vendees as to storage. It was not improper or immaterial to show that they made it a part of their bargain that the oil should remain where it was, in the warehouse, without charge for storage, and that it remained in the possession of the plaintiffs.

It was part of the whole arrangement between the plaintiffs and their customers, by which when oil was sold but not removed, it remained free from expense for storage, and covered by the prior policy of insurance. It could not, of course, force upon the defendants any contract different from the one which they made with the plaintiffs; but it was material to aid in showing with what purpose the peculiar phraseology of this policy was adopted. It was not in contradiction or explanation of, or addition to, a written contract. It was proof of a fact which existed after the sale and delivery, that though the sale and delivery were in legal contemplation complete, the subject of the sale remained in the vendor's possession, in accordance with a custom of the trade in that city. The judgment of the court below must be affirmed, with costs to the respondent.

All agree, except PECKHAM, J., who does not sit.

Judgment affirmed.