JOHN S. KLINE AND CLINTON McCLARTY, RECEIVERS, ETC., APPELLANTS, *v.* THE QUEEN INSURANCE COM-PANY, RESPONDENT.

*Insurance — Agency — Sufficient interest in property, to insure in agent's name — what is.*

A general agent, having the care, management, sale and control of his principal's property, with power to preserve and dispose of it, and liable to account to his principal for it or its proceeds, has a sufficient interest in the property to enti-tle him to effect insurance on it in his own name, the merchandise being described in the policy as "their own, or held by them in trust or on commission, or sold but not delivered."

Whether such custody created a trust such as to render it a proper subject of insurance under a policy delivered to the agent, *quære.*

APPEAL from a judgment in favor of the defendant, entered on the report of a referee, dismissing the complaint in an action upon a policy of insurance containing, among others, the following pro-visions: "This policy of insurance witnesseth, that the directors of the Queen Insurance Company of Liverpool and London do, by these presents, cause Wellington A. Hardy to be insured $6,000 on merchandise, principally whiskey and packages con-taining the same, their own or held by them in trust or on com-mission, or sold but not delivered, contained in granite and brick building situate Nos. 213 and 215 State street, in Boston, Mass. (other insurance permitted without notice until requested), against all loss or damage to the same by fire for and during the term of twelve months, commencing the risk the 21st day of January, 1873, at noon, and to continue until the 21st day of January, 1874, at noon."

*F. W. Bangs,* for the appellant. It is not necessary that the insured should be invested with the legal title to the goods. (*De Forrest* v. *Fulton Ins. Co.*, 1 Hall, 84 ; *Stilwell* v. *Staples*, 19 N. Y., 401.) It is enough if he had the care, custody, sale and management of the goods. (*Lucena* v. *Crawford*, 3 Bosanquet & P., 75 ; Code, § 113.) The facts found by the referee entitle the plaintiffs to judgment. (Code, § 330 ; *Beach* v. *Cooke*, 28 N. Y., 508 ; *Brawn* v. *Winnie*, 29 id., 400.)

*James Emott,* for the respondent. An insurable interest, in respect to property held in trust, can only exist where the assured

is entitled to some benefit, or is under some liability, in respect to the property insured. (*Lucena* v. *Crawford*, 2 N. R. [Bos. & Pul.], 269 ; *Seagrave* v. *Union Ins. Co.*, 1 L. R. [C. P.], 305 ; *De Forrest* v. *Fulton Fire Ins. Co.*, 1 Hall, 84.)

DANIELS, J. :

The action was upon a policy of insurance issued by the defendant to Wellington A. Hardy, by which it insured him in the sum of $6,000, against loss and damage by fire, " on merchandise, principally whiskey and packages containing the same, their own or held by him in trust or on commission, or sold but not delivered, contained in granite and brick building, situate numbers 213 and 215 State street, in Boston, Massachusetts," for the period of twelve months, " commencing the risk the twenty-first day of January, one thousand eight hundred and seventy-three, at noon." On the 29th day of October, 1873, a fire occurred in the premises mentioned in the policy, by which the property was destroyed and injured to an amount exceeding that stated in the policy. The property was not owned by the person named as the assured in the policy, but it belonged to Milton J. Hardy & Co., a firm carrying on business in the city of New York. After the loss, the assured commenced the present action for the recovery of the amount mentioned in the policy, and his right to maintain it was placed upon the ground that he held the property in trust at the time of the fire, within the meaning of that term as it was used in the contract of the defendant. That, without doubt, was his relation to the property of the firm, situated in Boston, when the policy was executed. For that property and the business carried on in Boston by means of it had, before that time, been placed in the name of the assured, by its voluntary transfer. But before the property destroyed by the fire was sent to Boston, his relation to the firm had been changed by a restoration of its business to its own name. And, accordingly, it can only be necessary to ascertain his position after that change, for the purpose of determining whether a recovery should be had by the plaintiffs, who now represent his interest as well as that of the firm of M. J. Hardy & Co. in the action.

The property was sent to Boston on the 24th of June, 1873, and

it was there placed in certain premises which had been rented by the assured. The demise was orally made to him in his own name, but the lessors entered it as being made to the firm employing him. That was not then known to him, and when he was afterward informed of it he dissented from the correctness of that supposition, and stated to the lessors that he had hired the premises for himself; and they seem to have been held upon that understanding; but the rent was paid out of the proceeds of the business of M. J. Hardy & Co. The effect of the transaction would seem to be that he rented and held the premises as a place of deposit of the property of and for that firm, and from thence it was from time to time delivered by a cartman, acting under his authority and directions. The assured had possession of one key and the cartman of the other; but the action of the latter was entirely subject to the authority of the former. From the property which was kept upon the premises sales were made by the assured, and a bank account maintained in the name of the firm, upon which he drew for funds as their use became necessary in their business. The assured had the oversight of the business of the firm in Boston, to which he went about once in each month; but it was chiefly transacted in New York, where the books were kept and the entries in them made. While the property was held and the business carried on in this manner the assured acted for the firm under the authority of a written power of attorney; by that he was authorized to sign the firm name "to all checks, notes, contracts and obligations necessary or proper for carrying on the business of the said firm in the city of New York, or elsewhere, and to make, execute and deliver all or any of such instruments as aforesaid, sell goods and merchandise, receive and collect moneys due us and take all necessary proceedings for that purpose, and to give receipts and discharges, and, generally, to do and transact all the usual, necessary and proper business of said firm in the city of New York, or elsewhere; giving and granting unto our said attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully, to all intents and purposes, as we might or could do if personally present." And the business managed and transacted by him was of the nature, so far as his acts are concerned, as this

instrument described. It will be seen, therefore, that he was much more than a mere clerk; he was a general agent, having the custody and control of his principal's property, with full power to preserve and dispose of it in the way he deemed most appropriate to the prosperity and success of their business, and liable to account to them for it or its proceeds when called upon for that purpose. The care, management and sale of the property constituted his employment; and to the extent of its continuance he was interested in its preservation. An entire or partial destruction of the property would necessarily end or abridge that employment; and the risk of loss in that manner was sufficient, by the way of interest, to entitle him to insure the property. In a general sense, too, and as that term is ordinarily used, he held the property committed to his custody in trust, for the firm; it was under his charge and subject to his disposition, and, to that extent, had been intrusted to him. He did not hold, or control, or sell it for himself, but for his principal; and that, in the ordinary signification of the term, was a trust.

The courts have gone very far in sustaining policies of the description of that executed in this instance. But no further than the interests and convenience of trade and business, and the probable intention of the parties justified. They are executed and received to meet the necessities and protect against the casualties of business as it is ordinarily transacted and carried on in commercial communities. The underwriters understand that to be their nature, and no injustice can be done to them if they are obliged to sustain the consequences of the risks intended and understood to be taken. A fair construction of the terms of the contract produces that result.

In the early case of *Craufurd* v. *Hunter*, (8 Term [D. & E.], 14), a policy taken by commissioners as trustees, who were "to take into their possession and care all Dutch ships and effects detained or brought into the ports of Great Britain, and to manage, sell and dispose of the same to the best advantage, according to the instructions they should receive from his Majesty and his Privy Council" was held to be valid and the plaintiff entitled to recover upon it. And yet the interest of the assured in the property was less than that resulting from this power of attorney, which con-

ferred an absolute right of sale. This case was very earnestly contested, and finally determined by the House of Lords (5 Bos. & Pull., 288, 289, 294), in favor of the assured. It was fully examined and thoroughly discussed in the case of *Herkimer* v. *Rice* (27 N. Y., 163), and the doctrine maintained by it approved. In *Putnam* v. *Mercantile Ins. Co.* (5 Met., 386), it was held that a commission merchant who was the consignee of a cargo, had such an interest in his anticipated commissions, in case of its safe arrival, as enabled him to insure it while on the voyage. And a similar decision was made in *French* v. *Hope Ins. Co.* (16 Pick., 397). In deciding the case of *De Forrest* v. *Fulton Ins. Co.* (1 Hall, 94), it was held by JONES, C. J., that a " consignee who has the actual possession of the property, with plenary powers of sale, must be clothed with a special property in the goods, so as to enable him to effect a valid insurance upon them in his own name, and to entitle him to recover for the loss of them upon an averment of interest in himself." (Id., 121.) And yet the rights of such a consignee in the property would manifestly be no greater than that of the assured in this case, who, though not entitled to commissions, would still have the right to a reasonable compensation for services in the custody, care and sale of the property under his charge. A similar conclusion was declared in *Stillwell* v. *Staples* (19 N. Y., 401), where cloth received to be manufactured into clothing was held to create such a trust in its custodian as to render it a proper subject of insurance under a policy delivered to him. It was there stated that " the words ' in trust ' may, with entire propriety, be applied *to* any case of bailment, where goods belonging to one person are intrusted to the custody or care of another, and for which the bailee is responsible to the owner." (Id., 403.) *Waring* v. *The Indemnity Fire Ins. Co.* (45 N. Y., 606), went still further, and held that property sold and constructively delivered, but not removed, and in which, consequently, the custodian had no further interest, was within the protection of a policy held by him, which insured property sold, but not removed. And FOLGER, J., who delivered the opinion of the court, said that the term " held in trust " included property of which the insured had the care and custody, intrusted to him as the representative of another, and for which he was responsible to the .

owner. The right to insure, he said, " is put upon the fact that having the possession of the property, exclusive as to all but the owner, to whom they are responsible, they have the right to protect," it, " from loss, so that it or its value may be rendered to the owner when he calls for his own." (Id., 610, 612.) Such a responsibility rested upon the agent who received the policy in suit, and that, with his custody of and interest in the continued existence of the property for the purposes of the business he managed and carried on under the power of attorney, was sufficient to entitle him to insure it against loss by fire in his own name. And, under the authorities already cited, the loss could afterward be recovered by him in an action on the policy for the benefit of his principals.

Instead of dismissing the complaint in the action, the learned referee should have held that the plaintiffs were entitled to recover. Possibly, the court has the power now to change the direction which was given and authorize a judgment in the plaintiff's favor. But it will be more strictly regular to send the case back so that the findings in the report can be made to conform to the conclusions which the court deems to be warranted by the proof appearing in the case. The judgment should be reversed and a new trial ordered, with costs to abide event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.