Williams, J.
The policy contained the following conditions ;
“ This policy shall be void and of no effect if the interest of the assured be other than the entire, unconditional and sole ownership, or if the property insured be a building standing on ground not owned by the assured in fee simple. Mo notice to, and no consent of or agreement by, any agent of the company shall be binding on this company until such notice, consent or agreement, as the case may be, is clearly expressed and endorsed in writing hereon, and signed by such agent. Mo agent has power to waive any condition of this contract.
Some controversy arises between the counsel as to whether the agent was, at the time the policy was issued, informed as to the real nature of plaintiff’s interest in the real estate and buildings. I must find with the plaintiff upon this question. I can put no other reasonable construction upon the evidence.
The fact being thus found, the company is not in a position to-urge want of absolute title in the plaintiff to the property as a defense to this action. It seems to be pretty well settled now that knowledge of the agent is knowledge of the company, and such knowledge operated as a waiver of the condition in the policy, or an estoppel upon the company’s interposing the condition of the policy and its breach as a defense to this action. Broadhead v. Lycoming Ins. Co., 14 Hun, 452 ; Miaghan v. Hartford Fire Ins. Co., 24 id., 58; Couch v. Rochester G. Fire Ins. Co., 25 id., 469; Van Schoich v. Niagara Fire Ins. Co., 68 N. Y., 434; Whited v. Ger. Fire Ins. Co., 76 id., 415; Bennett v. N. B. etc., Ins. Co., 81 id., 273 ; Woodruff v. Im. F. Ins. Co., 83 id., 133; Haight v. Cont. Ins. Co., 92 id., 51.
There seems to be no doubt but the plaintiff, upon the evidence and in view of the law, had an insurable interest in the buildings to the full amount of the value thereof. He was in jdossession under an agreement with the owner, under which he was to occupy during his life, he to keep the building in repair and insured, and to pay the taxes.
In Lawrence v. St. M. F. Ins Co., 43 Barb., 479, it was held the assured, who was in the occupation of buildings under an agreement to keep them insured for the plaintiff to the extent of $5,000, had an insurable interest in the property to that extent, that he could be liable to plaintiff to that extent for a failure to keep buildings so insured.
In Kline v. Q. I. Co., 7 Hun, 267, aff’d, 69 N. Y., 614, it was held a general agent having the care, management, sale and control of his principal’s property, with power to preserve and dispose of it, and liable to account to his principal for it, or its proceeds, had a sufficient interest in the property to entitle him to effect an insurance on it in his own name.
In Waring v. Indemnity F. I. Co., 45 N. Y., 606, it was held agents, commission merchants or others, having the custody of, and being responsible for property, may insure it in their own names, and recover of the insurer, not only a sum equal to their own interest in the property by reason of any liens, advances or *55 charges, hut the full amount named in the policy up to the value of the property.
In Redfield v. H. P. Ins. Co., 56 N. Y., 354, it was held the plaintiff, in possession of buildings of which his wife had title, but which she had agreed to give him a life lease of, had an insurable interest in the buildings. See, also, Cone v. N. Fire Ins. Co., 60 N. Y., 619 ; Rohrbach v. Ger. Fire Ins. Co., 62 id., 47 ; Nat. Filt. Oil Co. v. Citizens' Ins. Co., 106 id., 535 ; 11 N. Y. State Rep., 4.
In the latter case it was said: “ The authorities decide that an interest, legal or equitable, in the property burned is not necessary to support an insurance upon it. It is enough if the assured is so situated as to be liable to loss if it be destroyed by the fire insured against; such an interest in the property connected with its safety and situation as will cause the insured to sustain a direct loss from its destruction is an insurable interest; if there be a right in or against the property which some court will enforce upon the property, a right so closely connected with it, and so much dependent for value upon the continued existence of it alone, as that a loss of the property will cause pecuniary damage to the holder of the right against it, he has an insurable interest.
In view of these authorities, I must hold the plaintiff had such an insurable interest as entitled him to take and hold the insurance in question, and to recover, in case of loss, the amount of the insurance to the extent of the full value of the buildings.
The remaining question in the case relates to the settlement made between plaintiff and the defendant’s agent.
There is no dispute but the settlement was made, and in the absence of fraud or mistake must be -upheld and enforced. The plaintiff’s claim is that such a case is presented by the evidence as justifies the court for fraud or mistake, or both, in relieving the plaintiff from the settlement made. The plaintiff does not deny but that he understood the effect of settlement he made, and he does not claim he was mistaken as to the facts of the papers he executed, upon which the settlement was based. What he claims is, that he was mistaken and misinformed as to his legal rights against the defendant, based upon such facts that he supposed and believed the policy was entirely invalid and he could recover nothing under it; and that this mistake as to the law was induced by the assurance of the defendant’s agent that he knew what the law-was, and his statement that, under the law, the policy was so invalid and he could recover nothing under it, and plaintiff claims such a mistake of law, so induced by defendant’s agent, entitles him to be relieved from the settlement.
I see no reason to doubt the plaintiff, in making the settlement, did act under such a mistake as to the law. He believed upon the facts he could not, under the law, recover from defendant anything for the loss of any of his property. I have arrived at an entirely different conclusion; that in the absence of the settlement he was, upon the facts, entitled legally to recover the amount of the insurance upon all the property, to the extent of the *56 value thereof. It cannot well be said the agent acted fairly or honestly towards plaintiff in assuring him he knew what the law was, and that the law made the policy entirely invalid so as to prevent plaintiff’s recovering not only the value of the buildings, but of t£e personal property also. He must have known better than that, and when he so represented he must have done it with the purpose of receiving a settlement he could not otherwise have made. The plaintiff was himself ignorant and inexperienced in such matters, while the agent was, and was understood by the plaintiff to be, an insurance adjuster of large experience and knowledge of such matters, and of the law relating to the rights and liabilities of insurance companies, and persons insured by them, and the agent was, therefore, in a position to mislead and deceive the plaintiff by any misrepresentation he might make as to the legal rights of the parties at the time this settlement was made. That he did so mislead and deceive plaintiff and thereby procure this settlement, I do not doubt. The only question is whether such misrepresentation and deception and plaintiff’s mistake and misunderstanding as to his legal rights against the defendant before the settlement was made is sufficient ground for relieving plaintiff from the settlement which was induced thereby.
It is undoubtedly true that a court of equity cannot grant relief upon the sole ground of a mistake of law. Jacobs v. Morange, 47 N. Y., 57. But in that case there was no element of fraud and deceit practiced by one party upon the other to induce such mistake as to the law. It was a case simply of mistake as to the law.
In 2 Pomeroy’s Equity Jurisprudence, § 848, it is said:. “ Whatever be the effect of a mistake of law pure and simple, there is no doubt that equitable relief, affirmative or defensive,, will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages,, or concerning his’ own legal rights which are to be affected, is induced, procured, aided or accompanied by inequitable conduct of' the other parties. It is not necessary that such inequitable conduct should be intentionally misleading, much less that it should be actual fraud; it is enough that the misconception of the law was the result of, or even aided or accompanied by, incorrect or misleading statements or acts of the other party. When the mistake of law is pure and simple, the balance held by justice hangs even ; bat when the error is accompanied by any inequitable conduct of the other party, it inclines in favor of the one who is mistaken. The scope and limitations of this doctrine may be summed up in the proposition, that a misapprehension of the law by one party, of which the others are aware at the time of entering into the transaction, but which they do not rectify, is a sufficient, ground for equitable relief. A court of equity will not permit, one party to take advantage of, and enjoy the benefits of, an ignorance or mistake of law by the other, which he knew of and did not correct. While equity interposes under such circumstances, it follows a fortiori, that when the mistake of law by one party is induced, aided or accompanied by conduct of the other more positively inequitable, and containing elements of wrongful *57 intent, such as misrepresentation, imposition, etc., a court of equity will lend its aid and relieve from, the consequences of the error.”
And again, in §841 and note, it is said:
1 Mistake of law may be an ignorance or error with respect to some general principles of the municipal law, applicable to all persons, which regulate human conduct, determine rights of property, of contract and the like; and, on the other hand, the term may mean the ignorance or error of a particular person with respect to his own legal rights and interests which are affected by, or which result from, a certain transaction in which he engages. The person about to enter into the transaction may be ignorant of, or mistaken about, his own antecedent existing legal rights and interests which are to be affected by what he does, although he correctly apprehends the legal import of the transaction itself and its true effects upon his supposed legal rights. For example, a person about to give a release might erroneously suppose that he held only a life estate, while in fact he was the owner in fee; and might know that the legal operation of the conveyance was to release all the interest which he had. Compromises are the most common illustration of this species where the parties correctly understand the legal effect of the agreement itself which they make, and of the instruments which they execute, and the mistake consists of their ignorance or error as to the nature of the prior legal rights which they possessed and which they surrendered by means of the compromise. It will be found that a great majority of the cases in which mistakes of law have been relieved from, belong to this species. The ancient and familiar maxim of the common law, zgnorantia juris non excusat, has its primary application to cases of mistakes as to general rules of law controlling human conduct.”
And in § 849 it is said: “ Whenever cases have arisen where the mistake of law was as to private individual rights, relief has almost always been granted, although not always on this ground. Courts have felt the imperative demands of justice and have aided mistaken parties, although they have often assigned as a reason for so doing some inequitable conduct of the other party, which they have inferred or assumed. The real reason for this judicial tendency is obvious, although it has not always been assigned. A private legal right, title, estate, interest, duty or liability is always a very complex conception. It necessarily depends so much upon conditions of fact that it is difficult, if not impossible, to form a distinct notion of a private legal right, interest or liability separated from the facts in which it is involved, and upon which it depends. Mistakes, therefore, of a person with respect to his own private legal rights and liabilities may be properly regarded, as in a great measure they really are, and may be dealt with as mistakes of fact Courts have constantly felt and acted upon this view, though not always avowedly. Whenever a person is ignorant or mistaken as to his own antecedent and existing legal rights, interests, estate, duties, liabilities or other relations of property or conduct or personal status, and enters into some transaction the legal scope and operation of which he correctly *58 apprehends and understands, for the purpose of affecting such assumed rights, interests or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.”
It is not necessary in this case to go to the full extent thus indicated by this author. It does seem to me, however, that where, as in this case, the mistake of law is as to a person’s own ante-dent, existing legal rights and interests, and such mistake is induced by conduct on the part of the other party, not merely inequitable, but intentionally dishonest, wrongful and deceitful, a court of equity ought not to permit the party guilty of such inequitable and dishonest conduct to enjoy the benefit of the mistake of law by the other party, which he himself induced, and that a settlement made under such a mistake of law and induced thereby should be set aside and the injured party relieved therefrom.
In Busch v. Busch, 12 Daly, 476, a young man residing in New York city died, leaving property in Germany and in the state of New York, and leaving a father and mother in Germany and a wife in New York, but-leaving no children or other descendants. The wife represented to the father and mother that by the laws of the state of New York she, the wife, was entitled to his entire estate. The father and mother were ignorant as to the law and believed the wife’s statements with reference to it, and were induced by such statements and mistake of law to, and did sign an agreement by which they relinquished all claims upon the property of the deceased to the wife, she agreeing to donate or pay to the father and mother out of the estate a certain sum, and they to-erect a monument at his grave and pay expenses of his sickness and other disbursements. It was held the agreement should be set aside as void whether the wife did or did not know what the laws of the. state of New York were. The court adopted the view of the trial court that the wife knew she was falsely stating what, the laws of New York wore, but also expressed the opinion that if she supposed she was tolling the truth it was a case of mutual mistake, and should be set aside under Boyd v. De La Montagnie, 73 N. Y, 503.
case a was to property toiler husband through a third party, by misrepresentation, made by the husband, that she was liable for certain debts, and the transfer would delay the creditors and save the property. In fact she was not liable for the debts at all. The transfer was set aside at the suit of the wife’s executor, and it was held -it was not necessary it should appear the husband knew his representations were untrue. A mutual misapprehension or mistake was enough. It may be said for this case,'perhaps, that the question of liability or non-liability may have depended upon facts as well as law. The. court says:
“Assuming the husband believed that his statements to his wife were true, it follows that the parties acted under a mutual mistake and error; if it be regarded a mistake in law, it is. one, I ap *59 prehend, which courts of equity will relieve against, especially between parties thus situated.” Citing Story’s Eq., § 138.
Story, in § 138, among other things, says: “We trust the principle that cases may and do occur where courts of equity feel compelled to grant relief upon the mere ground of the misa2iprehension of a clear rule of law which has so long maintained its standing among the fundamental rules of equity jurisprudence, is yet destined to afford the basis of many wise and just decrees, without infringing the general rule that mistake of law is 2»'e-sumptively no sufficient ground of equitable interference.”
It seems to- me the court may relieve the xhaintiff from this settlement without going to the length the courts and text-books have gone in laying down rules as to the relief afforded in equity from the results of mistakes of law; and that this is a case where the court should exercise this equitable power.
The plaintiff, after the settlement was made and before collecting the money on the draft, took legal advice and discovered his mistake as to the law under which he had made the settlement, and then a corres2Dondence was commenced and continued between his counsel and the defendant which resulted in a demand of the return of the jxdicy and cancellation of the settlement pa23ers, and an offer to return the draft, which was refused, and this action was brought. The draft was produced upon the trial, is still uncollected and can be surrendered and cancelled upon the termination of the action.
My conclusion is that the settlement should be set aside and the plaintiff should recover the amount of his loss, in all $1,003.20, the draft being surrendered up to defendant for cancellation, and plaintiff should recover his costs of this action.
Let formal findings be prejm-ed by plaintiff’s counsel and submitted to defendant’s counsel for ajqM’oval as to form and then to •me for signature. Bequests will be passed upon at time of signing findings.
I. H. Ames, for app’lt; Hannibal Smith, for resp’t,
Hardin, P. J.
After carefully looking into the evidence given on the trial we are satisfied that the findings of fact are supported by the evidence, and are in accord with the weight of the evidence ; we must, therefore, acce23t the findings of fact made by the trial judge. We cannot, therefore, agree with the learned counsel for the appellant, who claims in his points that “ there is no evidence out of which the court can spell fraud,” in respect to the circumstances attending the interview between the plaintiff and the agent of the defendant at the time the plaintiff was induced to surrender the policy and receive from the defendant’s agent a draft upon the defendant for $400.
We have looked at the exceptions taken during the progress of the trial and find nothing in them justifying an interference with the decision made at the circuit. Lpon the main questions involved in the case, we are of the opinion that they are satisfactorily discussed and disposed of by the ojiinion of the learned trial judge. We therefore affirm the judgment entered.
*60 Judgment affirmed, with costs.
Martin and Merwin, JJ., concur.