ber advised the defendant that he was ready to take the farm at $9,000. The plaintiff therefore had a substantial equity in this agreement. If the sale to Currie could have been completed, there was a profit to her of nearly $2,000; and the defendant, after acquiescing in and taking part in these negotiations, warranted only by the operation and continuance of the agreement, could not summarily deprive the plaintiff of her rights in this contract. The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed and a new trial granted, with costs to the appellant to abide the event. All concur, except STOVER, J., who dissents in memorandum.

STOVER, J. (dissenting). I dissent. The agreement of April 6, 1900, was a mere option, and plaintiff's assignor was bound to exercise it within two years, unless renewed. There is no claim that it was ever renewed, but an attempt is made to prove a waiver. I do not think the evidence shows anything more than an attempt to make a new arrangement for the purchase of the farm. Until plaintiff's assignor had given notice that he intended to take the farm under the agreement, he was not entitled to the statement of account; for it was, only in the event of his becoming the purchaser that he had any interest in the amount that had been expended, and defendant was not bound to give notice of his intention to exercise his option. But, beyond all this, defendant did give him a statement, and the fact that it was not satisfactory did not extend the time to exercise the option. Plaintiff's assignor seems to have acted upon the theory that he was entitled to know how much the net income of the farm was before he exercised his option. I think he was wrong in thus interpreting the contract. It does not appear that he performed on his part, and I do not think defendant was in default.

I think the judgment should be affirmed.

(100 App. Div. 108)

BURKE v. CONTINENTAL INS. CO. OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, Fourth Department. January 4, 1905.)

1. FIRE INSURANCE—POLICY—CHANGE OF TITLE—CONSTRUCTION.

Under a policy of fire insurance covering the product of a glass manufacturer's plant, "his own or held by him in trust" or on commission, "or sold but not delivered, for which he may be held liable," a contract of the insured whereby he sold to one corporation his total product is not a transfer or change of title, within an inhibition of the policy to that effect, especially where the contract of sale was conditional only; the seller remaining liable for all losses except by fire, and agreeing to pay the premiums for insurance on the product.

2. SAME—CONTRACT BETWEEN INSURED AND VENDEE—INSURABLE INTEREST.

The fact that the insured entered into a contract for the sale of the total output of his plant to one corporation, which released the insured, as between the parties thereto, from liability for loss by fire on the goods insured, was not one of which the insurer could take any advantage to defeat its liability to the insured for a loss under the policy on the ground

that the insured had no insurable interest, especially where it appeared that the purchase price of the goods had not been paid, and that, though the purchaser applied for the insurance, the seller paid the premiums.

Stover, J., dissenting.

Appeal from Special Term, Erie County.

Action by William E. Burke against the Continental Insurance Company of the City of New York. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

J. H. Metcalfe, for appellant.
Moses Shire, for respondent.

SPRING, J. The defendant insurance company on the 4th of May, 1900, issued its policy of insurance covering personal property manufactured by the D. C. Cunningham Glass Company, a Pennsylvania corporation doing business at Pittsburg, in that state, and which is the assignor of the plaintiff. The amount of the policy is $2,500, and it contains provisions peculiar to the manufacture and sale of goods. The Cunningham Company was engaged in the manufacture and sale of glass, and in its warehouses goods which were sold were retained in its actual possession, and the quantity on hand was changing from time to time. The scheme of insurance was to cover this class of property, even though it had been actually sold, but the possession withheld by the manufacturer, either as the custodian or agent of the seller, or by reason of nondelivery of the manufactured article. The policy reads:

"$2500 on stock of window glass and packages containing the same, his own or held by him in trust, or sold but not delivered, for which he may be held liable; all while contained in any or all of the brick and frame buildings," etc.

That is, even though the insured had sold glass, it might "be held liable" either as trustee or agent of the buyers, or before the actual removal of the property from its custody, and an insurable interest, therefore, was recognized in it by the defendant.

The expression "in trust" is not susceptible of the same construction as when applied to the relations of a guardian and ward or to a testamentary trustee. There are two antithetical clauses—"his own," which, of course, refers to that absolutely belonging to it, or "held by him in trust," which with equal perspicuity signifies property which it holds as custodian or bailee. "Sold" qualified again by "but not delivered," indicating that, though a physical sale may be made, the delivery has not been fully consummated. In Stillwell v. Staples, 19 N. Y. 401, the words "in trust" in a like correlation in an insurance policy were considered. The court say at page 403:

"It is quite apparent that the words 'in trust,' as thus used, are not to be taken in any strict, technical sense, which would limit their operation to cases where the title to goods had been vested in a trustee, subject to some specific trust to be executed by him. * * * The words are, 'the property of the insured, or held in trust,' etc. The antithesis shows that the words 'in trust are meant to cover goods not the property of the insured.' * * * The words 'in trust' may with entire propriety be applied to any case of bailment,

where goods belonging to one person are intrusted to the custody or care of another, and for which the bailee is responsible to the owner."

In December, 1900, and while the policy was in force, the Cunningham Company entered into an agreement with the Independent Glass Company, a New Jersey corporation, whereby the latter company agreed to purchase all the products which the Cunningham Company had on hand, and which it manufactured up to December 31, 1902. The pertinent provisions of this agreement are—

"That all said glass to be delivered and become the property of the said party of the second part as soon as manufactured; the same to be delivered on cars, or shipped on the orders of the party of the second part, or stored in the warehouse or elsewhere on the property of the party of the first part for shipment thereafter by the party of the first part upon orders or directions given by the party of the second part and for this purpose the said party of the first part does hereby let and lease unto the party of the second part, for the purpose of storing its glass as aforesaid at a rental of One Dollar, its warehouse or warehouses, or other buildings in which the same may be stored, situate at Pittsburg, Pennsylvania, with the right to use all switches, and sidings and other facilities for approaching the same during the continuance of this agreement. The said party of the first part shall, until said glass is subsequently shipped upon the orders of the said party of the second part, be responsible and liable for and charged with the custody and safety of the glass so to be stored in the warehouse or buildings aforesaid, and with any and all loss thereof or damages thereto, except loss by fire. The final shipment of said glass, the party of the first part agrees, shall be made at its cost, and without charge to the party of the second part. Said glass shall be insured by the party of the second part, the premiums of insurance, however, shall be paid by the party of the first part."

It was further provided that the Cunningham Company should render daily reports to the Independent Company of the glass shipped upon its orders or stored in said warehouses, and a further report on the 1st day of each month of the manufactured product in the warehouses; and the said purchaser, before the 1st and 10th of the month, was to pay therefor at prices stipulated in the agreement, either by four months' notes or by cash, for the glass manufactured during the preceding month. On the 3d day of April, 1901, the glass in the factory of the Cunningham Company was destroyed by fire, and the entire loss covered by the insurance was adjusted at $4,646.62. There was concurrent insurance on the property, and the plaintiff has recovered of the defendant its ratable proportion of the loss.

The contract between the Cunningham Company and the Independent Glass Company does not transfer or extinguish every right of the manufacturer in the glass. While it provides for an immediate sale and an immediate delivery, yet the bulk of the glass was yet to be manufactured. It was to be kept in the warehouses of the manufacturer, and, until it was actually shipped upon orders of the Independent Company, the Cunningham Company was to be liable for any damages sustained, except by fire. If the building fell in and injured the glass, if the glass was broken through the acts of any third parties or the negligence of the agents of the vendor, or if any of it was stolen, the Cunningham Company must stand the loss. It was responsible for its safety, and must bear the cost of shipment. While the purchaser was charged with the duty

to insure, the premiums of such insurance were to be paid by the seller. It is a fiction—a travesty on words—to say that this contract was one of unqualified sale and purchase. It was a conditional sale, in that the Cunningham Company still kept an interest in the property, still was liable for damages or loss, was still charged with the safe-keeping of the property, and in that the amount to be paid therefor was not to be adjusted until some time after the storing of the manufactured product. The ipse dixit of the parties cannot countervail the explicit acts recited in the agreement to be performed by the manufacturer before his interest in the property wholly terminated. It is plain that the policy in suit was issued with the expectation that the insured from time to time would make sales of its goods, to be set apart and identified, but still in its control and possession, and for the future shipments of which it was responsible. The insurance contract contemplated that the glass would be sold by the manufacturer, and it was to be effective on property "held in trust, or sold but not delivered." If sales had been made to individual customers of specific quantities of glass, and separated from the general bulk, and retained by the seller to await the shipping orders of the buyers, the policy would cover the property. The legal liability is not altered because, forsooth, the whole product was sold to one purchaser.

The counsel for the appellant relies upon the line of cases like Germania Fire Insurance Company v. Home Insurance Company, 144 N. Y. 195, 39 N. E. 77, 26 L. R. A. 591, 43 Am. St. Rep. 749, which upholds a provision in a policy invalidating the contract upon a transfer or change of title. The distinction between that class of cases and the present one is that the policy in suit was issued with the intention that the manufactured product would be sold, but retained in the possession of the seller. It was framed to meet precisely what occurred. Nor do we think it was essential for the Cunningham Company to await the action of the Independent Company to insure this property. The manufacturer must pay the premium in any event, and it had an insurable interest.

But it is said that the Cunningham Company was not liable for loss by fire. If full effect is to be given to this clause limiting its liability, its insurable interest is not thereby extinguished. The manufactured product on hand for a month back was not paid for, and the seller had to stand the chances of the ability of the purchaser to pay. That limiting clause was solely between the purchaser and the seller, and the former does not attack the authority of the Cunningham Company to insure, but acquiesces in the method adopted. The seller was liable for the premiums, and it is of little moment who made the formal application for insurance, as long as either had an insurable interest. The parties to the agreement could change the method of issuing insurance, or waive the performance of the agreement. If they elected to have the application for insurance by the Cunningham Company and the policy running to it, they only were interested in that alteration of their agreement. It was a matter with which the defendant had no concern, in view of the terms of the policy. Again, if the property was

burned by reason of the negligence or fault of the Cunningham Company, that company would be liable to its vendee. This liability in a mere warehouse creates an insurable interest. Berry v. A. C. Ins. Co., 132 N. Y. 49–56, 30 N. E. 254, 28 Am. St. Rep. 548. This also is true of a general agent intrusted with the control and disposition of the property of its principal. Kline v. Queen's Ins. Co., 7 Hun, 267, affirmed 69 N. Y. 614. If the insured is liable to suffer pecuniary loss by the destruction or injury to the property by fire, he has an insurable interest, although possessing no legal or equitable title therein. Berry v. A. C. Ins. Co., supra. And the full amount of the insurance may be recovered by the insured. Cal. Ins. Co. v. Union Compress Co., 133 U. S. 387–409, 10 Sup. Ct. 365, 33 L. Ed. 730; Foley v. Manufacturers' Fire Ins. Co., 152 N. Y. 131, 46 N. E. 318, 43 L. R. A. 664; Waters v. Monarch Fire Ass'n. Co., 5 El. & Bl. 870.

Possibly the plaintiff may be liable to account to the Independent Glass Company if the amount the seller received exceeds the value of his interest in the property, but that circumstance does not vitiate the policy. Waring v. Indemnity Fire Ins. Co., 45 N. Y. 606, 6 Am. Rep. 146; Cal. Ins. Co. v. Union Compress Co., 133 U. S. 409, 10 Sup. Ct. 365, 33 L. Ed. 730, supra.

But it is not necessary to go the extent suggested to support the decision in this case. If there was an absolute sale, and storing in the warehouses passed the title effectually to the glass company, the Cunningham Company "held it in trust," was the bailee for the benefit and as the representative of the purchaser, and the glass would be covered by this policy. Cross v. N. Y. Fire Ins. Co., 132 N. Y. 133–137, 30 N. E. 390. The Cunningham Company had at least the liability which attaches to the relation of bailee, and the contract of insurance was explicitly designed to indemnify it against loss by fire while it was holding the goods in trust as the agent or bailee or custodian for the real owner. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except STOVER, J., who dissents upon the ground that the title to the property in question was in the Independent Glass Company.

