### SYMMERS v. CARROLL et al.

(Supreme Court, Appellate Division, First Department. March 15, 1912.)

1. INSURANCE (§ 115*)—MARINE INSURANCE—INSURABLE INTEREST.

    The owner or charterer of a steamship has an insurable interest in goods in his possession to the full extent of their value against a loss for which it is possible that he may become responsible.

    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 139–157; Dec. Dig. § 115.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. INSURANCE (§ 115\*)—MARINE INSURANCE—INSURABLE INTEREST.

An owner of a vessel, who, as carrier, is liable to the owners of the freight for a loss by fire resulting from his design or negligence, has an insurable interest as to such possible liability and to his claim to freight.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 139–157; Dec. Dig. § 115.\*]

3. INSURANCE (§ 582\*)—MARINE INSURANCE—RIGHT TO PROCEEDS OF POLICY.

A policy of insurance procured by an owner of a steamboat, which insures him as freighter, forwarder, bailee, or carrier for account of whom it may concern, gives him the right to indemnity only; any surplus being for the benefit of the owners of the freight adopting the policy as made for their benefit.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1448–1451, 1453, 1454; Dec. Dig. § 582.\*]

Dowling, J., dissenting.

Appeal from Trial Term, New York County.

Action by Douglas Symmers against Howard Carroll and another, executors of John H. Starin, deceased. From an interlocutory judgment overruling the demurrer to the complaint, defendants appeal. Affirmed.

Argued before CLARKE, McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

A. F. Cushman, for appellants.

J. E. Carpenter, for respondent.

SCOTT, J. Appeal by defendants from interlocutory judgment overruling demurrer to complaint.

In the year 1904 John H. Starin, defendants' decedent, was the sole owner of a steamboat carrying freight and plying between the city of New York and the city of New Haven. Plaintiff's assignors, as well as a number of other persons, were shippers of goods by said vessel and had paid or agreed to pay freight therefor. On or about December 17, 1904, while on a voyage from New York to New Haven the said vessel was burned to the water's edge and almost wholly destroyed and her cargo including the goods of plaintiff's assignors, was entirely burned and destroyed. Starin in due course instituted proceedings in the District Court of the United States for the Eastern District of New York, under the appropriate federal statutes, to relieve himself from personal liability, and on May 17, 1905, obtained a final decree from said court, adjudging and decreeing that the said fire and the destruction of the merchandise as cargo was not due to any design, default, or neglect of him, the said Starin, and that he was not liable for loss, destruction, damage, or injury growing out of the loss by fire of said vessel and her·cargo. The question at issue in this action is as to the right of plaintiff's assignors and other shippers to participate in the proceeds of a certain policy of insurance held by said Starin at the time of the fire, and the full amount of which he subsequently collected from the insurer. That policy contained the following statements respecting the risks assumed by the insurer and the persons and interests intended to be covered by said insurance:

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"The Home Insurance Company, New York, by this policy of insurance, * * * does insure John H. Starin, as freighter, forwarder, bailee, common carrier or for account of whom it may concern; loss, if any, payable to him or order to the amount of $20,000 on goods, wares and merchandise, including live stock and baggage while on board the following vessels, 'John H. Starin,' against all loss, damage, detriment or hurt by fire, and any and all the other risks, perils and dangers incident to and consequent upon the use and navigation of the waters of the port, bays and harbors of New York, East and North or Hudson rivers, inland waters of New York, New Jersey, Long Island Sound and all waters adjacent or tributary to any of the above waters. Privileged to substitute other vessels of same class upon the approval in writing of this insurance company. * * * It is the intent of these insurers to fully indemnify the assured for all general average, charges and salvage expenses, and loss, damage, detriment or hurt to said property, but in no case shall this company be liable under this policy for a greater amount than the sums insured in this policy * * * loss limited to $20,000 by any one vessel at any one time. * * * This insurance covers cargoes on and under deck."

It is not alleged that Starin effected this insurance at the request of plaintiff's assignors, or that they were even aware that he held such insurance, nor is it alleged that they have paid or offered to pay any portion of the premium therefor. It is alleged that it was the intention of Starin to procure said insurance not only as common carrier, but as bailee and for the benefit of the owners of goods carried as cargo. This appears to be a conclusion of the pleader drawn from the terms of the policy. It is alleged that Starin paid out a portion of the insurance money collected by him to other owners of merchandise destroyed by said fire and situated the same as plaintiff's assignors, but has refused to pay to the latter their pro rata share of the money so collected. From this allegation we may assume, what was indeed assumed on the argument, that the insurance money collected by Starin exceeded his individual loss as common carrier of the goods destroyed.

[1] It is the settled law that the owner or charterer of a steamship has an insurable interest in goods in his possession to the full extent of their value against a loss for which it is possible that he may become responsible, and the question whether he has the right to recover upon the policy is not to be determined after the loss by inquiring whether he is in fact then liable to the owners on account of such loss. Munich Assurance Co. v. Dodwell & Co., 128 Fed. 410, 63 C. C. A. 152, certiorari to U. S. Supreme Court refused 195 U. S. 629, 25 Sup. Ct. 787, 49 L. Ed. 352; Hagan v. Scottish Ins. Co., 186 U. S. 423, 22 Sup. Ct. 862, 46 L. Ed. 1229; Waring v. Indemnity Fire Ins. Co., 45 N. Y. 606, 6 Am. Rep. 146.

[2] The terms of the bills of lading under which Starin received the goods are not given, but it may at least be assumed that as carrier he was liable to the owners for loss by fire resulting from his design or negligence. As to this possible liability as well as to his claim to freight he had a direct insurable interest and to the extent to which he had suffered loss he had a primary claim upon the insurance money.

[3] The liability as carrier for destruction of the cargo he escaped by the proceedings in the federal court. His actual loss, therefore, as the event proved, was much less than the amount of insurance collected. The question we have to solve is to whom the balance belongs. This

same question arose in Pennefeather v. Baltimore Steam Packet Co. (C. C.) 58 Fed. 481, which was an action in equity similar in form to the present. It was held that the carrier, after paying its own losses, held the residue of the insurance money for the owners of the cargo. In California Insurance Co. v. Union Compress Co., 133 U. S. 387, 422, 10 Sup. Ct. 365, 374 (33 L. Ed. 730), it is said:

"But, as a bailee, under a policy taken out to cover property his own or held by him in trust or on commission, may enforce the contract of insurance to the full value of the property destroyed, holding the proceeds primarily for his own benefit, and the balance for that of his bailer, the right of action of the plaintiff accrued on the happening of the loss."

In Home Ins. Co. v. Baltimore Warehouse Company, 93 U. S. 527–543, 23 L. Ed. 868, it is said:

"It is undoubtedly the law that wharfingers, warehousemen, and commission merchants, having goods in their possession, may insure them in their own names, and in case of loss may recover the full amount of insurance, for the satisfaction of their own claims first, and hold the residue for the owners. Such insurance is not unusual, even when not ordered by the owners of goods, and when so made inures to their benefit."

It is suggested that the foregoing cases are not controlling because of variances between the policies considered in them and the policy involved in this case in the description of the persons for whose benefit the insurance was effected. In the Pennefeather Case the policy had been taken out by a railroad company, and was made for the benefit of said company against a loss or damage by fire, "and also to insure each and all owners of such goods, wares, merchandise, baggage and property at time of loss." The policy was for $25,000, all of which the carrier had collected. Under its bills of lading it was exempt from liability for loss by fire occurring from any cause whatsoever except as to goods not exceeding $1,000 in value. In Home Ins. Co. v. Baltimore Warehouse Co., supra, the policy covered loss or damage by fire on merchandise in possession of the insured, a warehouseman, "their own or held by them in trust or in which they have an interest or liability." In California Ins. Co. v. Union Compress Co., supra, the policy insured bailees against loss by fire of cotton, "their own or held by them in trust or on commission."

In the policy involved in this action the insured is described as "John H. Starin, as freighter, forwarder, bailee, common carrier or for account of whom it may concern." We are of opinion that this phrase is the fair equivalent of those under consideration in the cases above cited. The effect of insurance "for whom it may concern" was discussed in Hagan v. Scottish Ins. Co., supra, and the words were held to be equivalent to the more specific phrase commonly used in English policies, in which the insurance is expressed to be "in the name of A. B. (the person effecting the policy) as well in his own name as for and in the name and names (without specification) of all and every other person or persons to whom the same (property insured) doth, may or shall appertain in part or in all." In both cases the phrase was deemed sufficiently broad to embrace all persons who have an insurable interest in the property at the time of loss, and the right to be insured.

The court quoted with approval from Phillips on Insurance the rule that it is not necessary where insurance is effected "for account of whom it may concern" that the party to be benefited shall be known at the time of the issue of the policy, but that the insurer may intend it for whatever party shall prove to have an insurable interest in the specified subject, in which case it will be applicable to the interest of the person subsequently ascertained to have such an insurable interest and who adopts the insurance. Further it was held that one may become a party of the insurance effected in his behalf, in terms applicable to his interest, without any previous authority from him, by adopting it either before or after a loss has taken place and is known to him. Here the plaintiff has adopted the insurance by asserting his right to share in its proceeds. It is manifest that Starin when he caused the words "for account of whom it may concern" to be inserted in the policy had in mind and intended that in certain contingencies some one other than himself should be entitled to share in the proceeds of the policies. That contingency did arise when a loss occurred under such circumstances that he was enabled to rid himself of liability. Who were then concerned in the proceeds of the policy over and above what was necessary to make Starin whole? Obviously the owners of the cargo must be deemed to have been intended to be covered by the phrase "whom it may concern." He took out insurance for the full value of the cargo, or at least for much more than his interest therein. By the policy of our law, he was entitled only to indemnity, and yet was permitted to collect the whole loss. Whatever remained after satisfying his loss was held for the benefit of those who might be concerned in the loss, to wit, the owners who adopted the policy as made for their benefit.

The judgment appealed from must be affirmed, with costs and disbursements, with leave to defendants to withdraw their demurrer and answer within 20 days on payment of all costs in the action.

CLARKE, McLAUGHLIN, and LAUGHLIN, JJ., concur. DOWLING, J., dissents.