## DUNCAN *v.* CHINA MUT. INS. CO.

(*Superior Court of New York City, General Term.* May 4, 1891.)

MARINE INSURANCE—ASSIGNMENT OF POLICY—SALE OF VESSEL.

Defendant issued its policy to the plaintiff, by which it contracted that, in case the steam-ship Samana was lost at sea, it would pay to the Samana Steam-Ship Company, "on account of whom it might concern," the sum of $5,000. A further clause provided that "any change of interest in the vessel hereby insured shall not affect the validity of this policy." The steam-ship was sold to the Banana Steam-Ship Company, and lost at sea during the life of the policy. The Samana Company

and plaintiff were practically one and the same, and to the latter the Banana Company transferred the policy of insurance, inuring to it as vendee, as security for a balance of purchase money unpaid; the Samana Company also transferring its rights, *pro forma*, to the plaintiffs. *Held*, that the provisions of the policy extended to the vendee under the clause providing for the change of interest; and that the plaintiff, as assignee of the vendee, was entitled to maintain suit in his own name by virtue of the promise to pay the loss "to whom it might concern."

Appeal from trial term.

Action by William Butler Duncan, Jr., against the China Mutual Insurance Company upon a policy of insurance issued by the defendant July 28, 1888, upon the steam-ship Samana, which then belonged to the Samana Steam-Ship Company. The plaintiff owned all the stock of this company, except a nominal amount of $25, which was held by five persons to satisfy some requirement of the English law. He was the managing owner, and, for practical purposes, the company. The vessel was valued in the policy at $45,000. The amount insured by the defendant was $5,000. In October, 1888, the company, through Mr. Duncan, made a contract with one Colville to sell the Samana for $41,000 to a company to be formed by Colville. Part of the price—$12,500—was paid in cash; the balance—$28,500—was secured by a mortgage. This contract further provided that the policies then existing upon the steamer should be held for a certain time for the benefit of the vendee, and that the vendee should pay the unearned premiums up to this time, and thereafter should itself take out policies. The agreement is annexed to the proofs of loss. The telegrams annexed thereto show that the vendee agreed to pay the unearned premiums on the policies on the Samana down to December 3, 1888. Mr. Duncan testified that the policy in suit was in his possession from its date until December 3, 1888, and that it was expressly agreed that he should continue to hold the policies as security for the mortgage. A company was formed by Colville, known as the "Banana Steam-Ship Company." The steamer was conveyed to this company, and it executed a mortgage to the plaintiff for the unpaid balance of the purchase money. Duncan testified that this was in fact the consideration for the mortgage, although in the printed form of the mortgage it is expressed to be given to secure a considerable sum of money due from the Banana Steam-Ship Company to the plaintiff. The steamship Samana sailed from New York, November 22, 1888, bound for Aux Cayes, in the West Indies. She has never since been heard from. The testimony of Capt. Fraser and Capt. Klinksel was taken on the trial in support of the proposition that the Samana was lost before December 3, 1888. The judge submitted to the jury the question whether the vessel was lost before the 3d of December, and they found that she was. At the time this proof was offered the evidence of Eustace and Hughes had not been taken. Their testimony shows conclusively that the proposed agreement to cancel the policy in suit from and after December 3, 1888, at noon, was never made. The plaintiff declined to assent to the condition on which alone the defendant was willing to cancel the policy, and it never was canceled. This proof rendered the evidence of the captains unnecessary, for it was conceded by the defendant that the vessel was lost at sea within the year covered by the policy. Upon the conclusion of the evidence, the defendant's counsel requested the trial judge to charge the jury: "(1) The plaintiff having sold the steam-ship insured, the extent of his insurable interest in the vessel was the amount of the unpaid purchase money, to-wit, $28,500. (2) That, without consent of the underwriters, the policy issued to the Samana Steam-Ship Co. could not be extended to cover any interest of the Banana Steam-Ship Co. in the vessel insured by any agreement between that company and the Samana Steam-Ship Co. (3) The Samana Steam-Ship Co. having parted with a portion of its interest in the insured vessel, the loss which it has suffered is but a partial loss. (4) The amount recoverable under the defendant's policy is to be ascertained by the following proportions: As $41,000 is to $28,500, (the unpaid purchase money

represented by the mortgage,) so is $5,000 (the amount insured by the policy) to the amount recoverable, namely, $3,475.50." The trial judge declined to charge either of the four propositions, and the defendant's counsel excepted. Only one question was submitted to the jury, and that for a special verdict, to-wit: "Was the steam-ship Samana lost at sea by or in consequence of any of the perils insured against by the policy in suit before the 3d of December, 1888? The jury found "that the vessel was lost prior to that date." Upon the coming in of this special finding the court directed the jury to find a general verdict in favor of the plaintiff for $5,644.92, the amount of the policy and interest, to which direction the defendant also excepted. The defendant then moved for a new trial, which was denied, and from the judgment and order denying the application for a new trial the appeal is taken.

Argued before SEDGWICK, C. J., and TRUAX and McADAM, JJ.

*North, Ward & Wagstaff,* (*J. Langdon Ward,* of counsel,) for appellant. *Wheeler, Cortis & Godkin,* (*Everett P. Wheeler,* of counsel,) for respondent.

McADAM, J. The contract was one of indemnity, and the defendant by its valued policy agreed that in case the steam-ship Samana was lost at sea it would pay to the Samana Steam-Ship Company, on account of whom it might concern, the sum of $5,000. The loss occurred within the life-time of the policy, and under its provisions the obligation to pay became complete. The meaning and intention of the parties is apparent. The policy insures "W. B. Duncan, Jr., on account of whom it may concern, in case of loss, to be paid * * * to Samana Steam-Ship Company, Limited." At the end of the policy is the following clause: "It is agreed that any change of interest in the vessel hereby insured shall not affect the validity of this policy." This contemplated the possibility that happened. While the policy was in force the Samana Steam-Ship Company sold the steamer to the Banana Steam-Ship Company for $41,000, in payment for which it received $12,500 in cash, and a consideration money mortgage, in the name of the plaintiff, its managing agent, for the balance of the unpaid purchase money, which mortgage, by virtue of the plaintiff's relations to the Samana Steam-Ship Company, was held by him in trust for it. Contemporaneously with the execution of these papers, another agreement was executed, by which the Banana Company was to have the benefit of the seller's policies of insurance. These instruments are to be construed together, as if all were contained within one. *Marsh* v. *Dodge,* 66 N. Y. 537. Their operation and effect were to create the change of interest contemplated by the special provision of the policy, and to make the Banana Company, so far as it became interested in the property, one of those to whom the policy concerned and its provisions extended. The loss was to be paid to the Samana Steam-Ship Company, and the money, when received by it, was to be divided among those concerned, according to their respective interests.

The principles relating to marine policies differ essentially from those affecting fire insurance. A marine policy has a somewhat wider scope than that which is generally attributed to it, and extends beyond the person by whom it is effected to all who derive from him subsequently by a purchase which includes the insurance as well as the property. See cases collated in 2 Amer. Lead. Cas. by Hare & Wallace, (5th Ed.) pp. 883, 884. It was said in *Carroll* v. *Insurance Co.,* 8 Mass. 515, that the underwriter was entitled to notice of the transfer prior to the loss. But this doctrine is at variance with the authorities which establish that the right to transfer the benefit of a marine policy to a purchaser of the property may be exercised without the knowledge or concurrence of the insurers. 2 Amer. Lead. Cas., *supra.* The same rule was declared in *Hitchcock* v. *Insurance Co.,* 26 N. Y. 68. And see *Henshaw* v. *Insurance Co.,* 2 Blatchf. 99; *Hooper* v. *Robinson,* 98 U. S. 528; and, incidentally, *Waring* v. *Insurance Co.,* 45 N. Y. 606; *Clinton* v.

*Insurance Co.*, Id. 454; *Cromwell* v. *Insurance Co.*, 44 N. Y 42; *Savage* v. *Insurance Co.*, 52 N. Y. 502. .The special provision in reference to change of interest was inserted in view of the rule stated, and to dispense with any notice of the change, even if notice would have otherwise been necessary. The phrase "whom it may concern" is a technical one, and applies only to those who are in contemplation of the parties making the contract. Phil. Ins. § 383; 1 Duer, Ins. p. 167, § 14; *Hooper* v. *Robinson*, 98 U. S. 528; *Crosby* v. *Insurance Co.*, 5 Bosw. 377. In case of a change of interest in the property and policy the transferee becomes a party concerned within the meaning of the contract, for the introduction of a new party by transfer of interest was authorized by terms of the policy, and was therefore within the contemplation of the parties as fully as if the transferee had been a party in interest at the time the policy was issued. In marine insurance the character of the risk, the value of the property, and amount insured are the main considerations for the insurer, to whom the money is to go in case of loss, is of little consequence, so long as it is paid to a person authorized to receive it. The policy fixed the value of the vessel at $45,000, and, being a total loss, the defendant is liable for its proportionate amount, $5,000, and there is nothing in the case which mitigates or reduces it. 1 Arn. Ins. 321. The Samana Steam-Ship Company made an oral assignment to the plaintiff of its rights in the premises, and subsequently the company made a written transfer thereof to one Barnes, and he in turn made a similar transfer to the plaintiff. These writings were executed after suit brought, but were only in confirmation of what had been orally done before, so that, like any other ratification, it related back to the time when the act was done which it was intended to confirm. These facts clearly established the plaintiff's right to the insurance money for whom it might concern. The defendant did not plead the non-joinder of the Samana Steam-Ship Company as a party plaintiff, and the transfer aforesaid concludes it as effectually as if it were before the court. There was also a failure to plead the non-joinder of the Banana Company, but its presence as a party was unnecessary. The action was properly conducted in the name of the plaintiff, as assignee of the Samana Steam-Ship Company, for the benefit of the Banana Company, to the extent of its interest. *Powles* v. *Innes*, 11 Mees. & W. 10; *Wakefield* v. *Martin*, 3 Mass. 558; *Earl* v. *Shaw*, 1 Johns. Cas. 313; *Sparkes* v. *Marshall*, 2 Bing. (N. C.) 761. The only effect of naming Duncan in the policy was to recognize him as the principal or agent to whom the insurer could look as the responsible creditor for the premium. 1 Arn. Ins. 165. If he had any interest in the subject-matter insured, he was sufficiently covered by the general phrase "whom it may concern," and did not require to be especially named. The case was carefully tried. The exceptions to the admission of evidence and to the refusals to charge the jury are without merit. The evidence sustains the verdict, and the motion for a new trial was properly denied. It follows that the judgment, as well as the order denying the motion for a new trial, must be affirmed, with costs.

TRUAX, J., concurs.

SEDGWICK, C. J., (*concurring.*) I agree with Judge McADAM, but would like to say that in my judgment the right of the Banana Company, as represented by the plaintiff, is not based upon its being intended as a party designated by the phrase in the policy "on account of whom it may concern," but rests upon the terms of the agreement for the sale by which the policy was to be held for their benefit and as collateral security for the payment of the mortgage of the purchase. This, of course, assumes that an assignee by absolute transfer can recover according to his interest at time of loss.