## DUNCAN v. NEW YORK MUT. INS. CO.

*(Superior Court of New York City, General Term.  May 2, 1892.)*

1. MARINE INSURANCE—CANCELLATION OF POLICY—IGNORANCE OF LOSS.

   The cancellation of a policy of marine insurance in consideration of the return of unearned premiums at a time when both parties were ignorant of the loss of the vessel is a mistake, and will be rescinded in equity, though the mistake was material to the contract of one party only.  16 N. Y. Supp. 842, affirmed.

2. SAME—INTEREST.

   Plaintiff having sought relief in equity, thereby assuming that he had no cause of action until the cancellation was set aside, the court erred in allowing interest on the policy from the date of loss.  16 N. Y. Supp. 842, modified.

Appeal from special term.

Action by William B. Duncan, Jr., against the New York Mutual Insurance Company, to set aside the cancellation of a policy of marine insurance. From a judgment for plaintiff, defendant appeals.  Modified.

Argued before SEDGWICK, C. J., and FREEDMAN and McADAM, JJ.

*North, Ward & Wagstaff,* for appellant.   *Wheeler, Cortis & Godkin,* for respondent.

McADAM, J.  Many of the legal principles affecting the rights and liabilities of the parties under the contract of insurance have been settled adversely to the defendant in an action by the plaintiff on a similar policy on the same vessel, issued by the China Mutual Insurance Company.  See 14 N. Y. Supp. 301, affirmed 29 N. E. Rep. 76.  The new phase now presented is as to the effect of a cancellation of the policy after the loss of the vessel, and before either party knew of the fact.  It is manifest that the parties intended to cancel the policy, not from the time of its original delivery, but on and after December 3, 1888, the day of the cancellation.  The defendant retained the premium for the risk up to that time, and returned merely the unearned premium for the time unexpired.  The vessel having been lost prior to the cancellation, the liability of the defendant had at that time become fixed and irrevocable.  The plaintiff did not intend, nor did the defendant expect, to be released from any actual liability already incurred and then existing, but from any that might occur thereafter.  The acts of the parties demonstrate this.  If it had been intended to rescind the policy *in toto,* the entire premium would have been returned, for this was the consideration of the defendant's agreement; for here, as in *Baker* v. *Insurance Co.,* 51 Mich. 243, 16 N. W. Rep. 391, the policy was not canceled until after the loss and right of action accrued, and, as was held in that case, "there is nothing in the mere act of cancellation to operate retroactively so as to cut off the claim for damages already existing."  Perhaps the plaintiff required no equitable relief if the surrender of the policy was intended to operate as to future liability only, but the plaintiff acted on the assumption that equitable relief was necessary to reinstate the parties to their former position; and the defendant, not having raised the objection in its answer that equitable relief was unnecessary, cannot raise that question now.  *Town of Mentz* v. *Cook,* 108 N. Y. 504, 15 N. E. Rep. 541; *Ostrander* v. *Weber,* 114 N. Y. 95, 21 N. E. Rep. 112.  We will assume, therefore, that the plaintiff was properly in equity, and that that branch of the court obtained complete jurisdiction over the controversy. The plaintiff did not seek for reformation, so that the court was not called upon to make a new contract for the parties, but to rescind the cancellation, so as to reinstate the parties where the contract itself placed them.  While equity will not reform a contract unless the mistake is proved to be the mistake of both parties, it may rescind and cancel a contract upon the ground of mistake of facts material to the contract of one party only. *Diman* v. *Railroad Co.,* 5 R. I. 130.  That is this case.  Story lays down the general rule "that an act done or contract made under a mistake or

ignorance of a material fact is voidable and relievable in equity," (Story, Eq. Jur. §§ 134, 140–143;) and Pomeroy, in treating of the same subject, says the mistake or ignorance "must concern a fact material to the transaction, as that a certain matter or thing exists at the present time, which really does not exist; or that a certain matter or thing existed at some past time, which did not really exist," (Pom. Eq. Jur. § 854.) Chief Justice SAVAGE, in *Mowatt* v. *Wright,* 1 Wend. 355, on the same topic, said "that error of fact takes place either when some fact which really exists is unknown, or some fact is supposed to exist which does not." In the present instance both parties evidently acted on the supposition that the vessel was in existence, and hence contracted with reference to a subsisting thing, which in fact had no existence at the time. Neither party knew nor had any reason to believe that the vessel had foundered prior to the time of canceling the policy, and must have contracted without such knowledge or belief, and on the implication that it was still afloat, and had an existence. In such a case—mutual mistake, going to the essence of the contract—equity may relieve, however innocent the parties may be, (Story, Eq. Jur. § 142;) and the same principle is carried into all contracts, of whatever character, based on the existence of the subject-matter thereof. Thus, if an article intended to be sold has no existence, there can be no contract of sale. If A. sells his horse to B., and it turns out that the horse was dead at the time, though the fact was unknown to the parties, the contract is necessarily void, (2 Kent, Comm. 468;) and the rule is in no way limited by the nature of the subject-matter involved, but extends to anything capable of existence, and which the contract implies has an existence at the time it is made, (*Dexter* v. *Norton*, 47 N. Y. 62; *Kein* v. *Tupper*, 52 N. Y. 550.) The setting aside of the cancellation seems warranted on equitable principles by the facts established. The insured certainly never intended to discharge an existing liability of $5,000 in consideration of the return of an unearned premium of $233.33, leaving in the possession of the insurer the premium for the risk up to and after the time the liability itself accrued; and effect should not be given to such a result where it is contrary to the manifest intention of the parties. See *Sperry* v. *Miller*, 16 N. Y. 407; *McGregor* v. *Board*, 107 N. Y. at pp. 516, 517, 14 N. E. Rep. 422, 423. The policy was surrendered, it is true, but there is no claim that it was destroyed, or intended so to be; and the surrender, in view of the facts, is consistent with the theory that it was made because customary, and, as evidence that the liability kept alive till December 3, 1888, was not to continue after that date. The intention of the parties must characterize the act and interpret its meaning. The evidence as to seaworthiness, loss of the vessel prior to December 3, 1888, and damages, sustain the findings made by the trial court; and, as there is no merit in the exceptions, but one question—that of interest—remains to be considered. The remedy invoked by the plaintiff was founded on the postulate that he had no action at law until the cancellation was set aside. Following this supposition to its natural conclusion, the item of $312.99 for 13 months' interest should not have been allowed. Interest is in the nature of damages after default by the defendant,—*Hanley* v. *Crowe*, (Sup.) 3 N. Y. Supp. 154,—and the theory of the suit (by which the plaintiff is of course bound) implies that he had no present cause of action until the cancellation was set aside.

For the reasons stated the judgment must be modified as to the item of interest, and affirmed as to the residue, without costs. All concur.