## ARCHIBALD Y. GRAHAM *et al.*
### *v.*
## ROBERT HOLLOWAY.

1. RESCISSION OF CONTRACTS—*by the acts of the parties.* As a general rule, a breach of contract by one party absolves the other from a performance of its terms and conditions. When such breach occurs, the other party is at liberty to rescind the agreement.

2. SAME—*as to the mode of rescission.* The party having the right to rescind may manifest his intention to do so in a variety of modes; one of which is by suing, and recovering damages sustained by the breach.

3. SAME—*effect of rescission.* And where a party elects to rescind by suing and recovering for a breach of the contract, he cannot afterward insist upon the performance of any of its conditions, unless the contract should be renewed.

25 — 44TH ILL.

4. SAME — *renewal after rescission.* The contract may be renewed after such a rescission, either by an express agreement of the parties, or by acts which show an intention to give it new force and effect.

5. SAME — *relations of the parties after such renewal.* But if a contract should be thus revived after having been rescinded by the recovery of a judgment for a breach of its conditions, the party who had rescinded cannot enjoy the fruits of his judgment and also insist upon the performance of the contract, — he cannot hold the two-fold and antagonistic position of a party to the contract, entitled to have its provisions executed, and a judgment creditor, whose rights as such are based upon a rescission of that contract.

6. So where a purchaser of land from one who held under a contract of purchase, having paid his purchase money, sued and recovered a judgment against his vendor for the money paid and interest, as damages for non-compliance of such vendor with his contract to convey, the recovery of such judgment operated as a rescission of the contract; and upon the original vendor filing his bill to subject the land to his lien for unpaid purchase money due from his vendee, such second purchaser who had recovered the judgment, filed his cross-bill asserting his rights as a purchaser, to the fee in the land after such prior vendor's lien was satisfied, and a decree was rendered recognizing him in that position, and at the sale under that decree he became the purchaser for the sum remaining due the original vendor, which was less than the amount of his judgment, and paid the money. Afterward, upon his attempting to collect his judgment, it was held, that, having assumed the position of a purchaser in his cross-bill, and obtained relief as such, he abandoned his position as a judgment creditor, and that, upon being reimbursed the amount he had bid at the sale to satisfy the prior vendor's lien, he must enter his judgment satisfied.

APPEAL from the Circuit Court of Warren county; the Hon. CHARLES B. LAWRENCE, Judge, presiding.

This was a suit in chancery, instituted in the court below, by Robert Holloway against Archibald Y. Graham, David Graham, Henry M. Boggess and Robert Moir. The object of the bill is to enjoin the collection of a judgment recovered by the Grahams against Holloway and Boggess, and to procure its cancellation.

The facts, so far as they are material to a proper understanding of the opinion of the court, are as follows:

On the 9th day of April, 1857, Perry Alexander, being the owner of a certain tract of land, sold the same to Holloway and Boggess, for the sum of $6,000; a part of the purchase price was paid down, and the residue to be paid in installments, and upon full payment Alexander was to convey.

On the 21st day of the same month, Holloway and Boggess sold the land to Archibald Y. Graham and David Graham for $10,000, which was to be paid in certain installments, and upon full payment being made, Holloway and Boggess were to convey with warranty. The Grahams entered under this contract, and remained in possession.

On the 25th of October, 1860, Boggess transferred his interest to Holloway. The Grahams having paid all the purchase money due under their contract, and Holloway and Boggess having failed to convey the land to them, and being unable to do so by reason of a portion of the purchase money due to Alexander remaining unpaid, they, the Grahams, commenced an action of covenant against Holloway and Boggess, to recover damages for non-performance of their contract to convey, and on the 22d of November, 1861, recovered a judgment therein for $12,670.59, being the full amount paid on the contract with interest, and collected thereon from time to time, to August, 1863, several sums, amounting in the aggregate to $1,153.60.

Alexander, on the 6th March, 1861, filed his bill for a specific performance of the contract made between him and Holloway and Boggess and prayed a decree for the payment of the balance due, and that his vendor's lien be enforced in default of payment. The bill made Holloway, Boggess, the Grahams and certain judgment creditors parties.

The Grahams answered this bill, and also filed their cross-bill, in which they recite the sale from Alexander to Holloway and Boggess, and that from the latter to themselves, and also the recovery of their judgment against Holloway and Boggess. They then claim that they are entitled to the fee simple title to the land, subject only to the claim of Alexander for the balance of purchase money due him. The cross-bill prays for relief as follows:

"Your orators pray that this their cross action may be adjudicated in the said complainant's said suit, and that a decree be rendered in both as if they were one; and that a decree be rendered in both thereof in favor of said Alexander and against

said Holloway and Boggess, for the amount which may be due and unpaid to. him of the purchase money of their purchase aforesaid of him, together with such costs in the premises as your honor may deem equitable; and in favor of your orators for the amount which may be due and unpaid to your orators of the judgment aforesaid of your orators against them, and such costs, if any, as your honor may deem equitable, deferring the operation, lien and effect of so much of said decree as is in favor of your orators, until that portion thereof in favor of said Alexander is paid and satisfied; and that said decree be so made a lien on said real estate for the payment thereof in the manner aforesaid. That your honor, if consistent with his views of the equities in the premises, give to said Holloway and Boggess a long day, if not such an one as is, in which to pay and satisfy said decree, and to your orators in which to pay and satisfy so much thereof as may be in favor of said Alexander; and that, in case of such payment within such time so to be fixed, of the amount that may be so due said Alexander, and such costs in the premises as the court shall direct, by any person or persons, that said Alexander, by the decree of this honorable court, be required within a time thereafter to be fixed by the court, to convey to your orators or their assigns, said real estate, with such covenants as your honor may direct, conveying to them the right, title and interest of said Alexander and the other defendants to said bill, than your orators, thereto; and that in case of the failure of said Alexander so to convey within such time thereafter, that the then county judge of said county of Warren be by such decree required to so convey said real estate to your orators, within a further time, to be in such decree named therefor. That, in case only that no such payment is made on such decree, as that last aforesaid, within the time so limited therefor as aforesaid, that such real estate or so much thereof as may be necessary to satisfy said decree, be sold under the direction of this honorable court for the satisfaction of such decree. And that the proceeds of such sale be applied as follows, to wit: 1st. To the payment of such costs as may be directed by said decree to be paid. 2d. To the

payment of so much of such decree as may be made in favor of said Alexander, together with so much interest as may have then accrued thereon, and so much costs in the premises as may be directed by such decreee.  3d.  To the payment of so much of said decree as may be made in favor of your orators, together with so much interest as may have then accrued thereon, and so much costs in the premises as may be directed in such decree, if any.  4th.  And the remainder thereof after the making of such payments, if any, be disposed of by such decree. That your orators have such other and further relief in the premises, as to your honor may seem equitable and proper."

The court rendered a decree, finding the sum of $3,100.49 still due to Alexander from Holloway and Boggess, and decreed as follows :

" That said Holloway and Boggess, shall, within ninety (90) days from the date of this decree, pay to the said complainant the said sum of money so found due him upon said contract, with interest at the rate of six per cent per annum from date, together with the costs of this suit ; and that, in default thereof, the master in chancery be required to sell said land at public vendue to the highest and best bidder, for cash, after advertising the time and place of said sale at least twenty days before such time of such sale in the Monmouth Review ; and, thereupon, said master in chancery shall make a good and sufficient deed to the purchaser or purchasers thereof, conveying all the title which said complainant has in said land, and all the equity of redemption which said defendants, or either of them, may have in said land, and all claims which they may have therein ; and, with the proceeds of said sale, the said master shall first pay to said complainant the said sum of money so found due him, as aforesaid, together with the interest and the costs of this suit.   And it is further ordered that if said Grahams become the purchasers at such sale, that the master shall bring the deed into court to be delivered to them upon complying with the further order of this court in the premises ; and if any other person or persons should become the purchaser or pur-

chasers, then the residue of money is to be brought into this court to be appropriated under the order of the court. And, provided further, that the bid of said Grahams, at the sale, be made and given and received by the master, over and above said complainant's debt and costs of this suit, as cash. And, provided further, that if said Holloway and Boggess shall pay said complainant said debt and interest before the expiration of said ninety days, and the sale of said premises by the master, and the costs, said complainant shall convey to said Grahams within sixty days thereafter, according to the terms of said contract. And, provided further, that said Grahams shall first satisfy said judgment against Holloway and Boggess. Or, it is further provided, that said Grahams may pay said complainant his said debt, interest and costs, and thereupon said complainant shall make a deed, as aforesaid, to them, and deliver the same, provided the said Grahams first enter satisfaction of all such judgment, save the amount he may have paid Alexander, as aforesaid, for his debt and interest and costs he may have paid in the premises.

" And, it is further ordered and decreed by the court, that, in case the said Grahams should refuse to accept the residue of the money to be obtained from the sale of said land, as aforesaid, with the said conditions and provisions in the decree mentioned, then the master in chancery is ordered, after paying said complainant, as aforesaid, and the costs herein, to bring the residue of the money into court, to be appropriated according to equity and justice at the next term of this court, to which time this case stands continued."

The premises were sold in pursuance of this decree, and one Lafferty became the purchaser, at the sum of $3,271.70. The master executed a deed to Lafferty, and out of the proceeds of the sale paid the costs, $109.20, and to the complainant $3,162.50, his debt and interest.

Lafferty became the purchaser at this sale at the instance of the Grahams, and for them, they refunding to him the money he paid for the land. Afterward, at their request, he con-

veyed to one Moir, who held it in trust for the Grahams, thus vesting in them the land for the sum of $3,271.70, paid by Lafferty, their agent, at the master's sale.

The Grahams then proceeded to the collection of their judgment at law against Holloway and Boggess, and thereupon Holloway filed this bill, asking that the Grahams be enjoined from making further collections upon their judgment, and that they be required to enter the same satisfied, — insisting that by their cross-bill in the suit by Alexander they had abandoned their judgment and elected to resume their position as purchasers, and that the decree in that suit recognized their claims in that regard.

The Grahams, on the contrary, contended they had not lost the right to enforce the collection of their judgment by reason of any of the proceedings had in that suit.

Upon a final hearing the court decreed as follows :

"It is found by the court that there is equitably due from said Holloway, complainant, to said Archibald Y. Graham and David Graham the sum of $2,803.45 on the contract and judgment described in said bill of complaint, in manner following, viz : That there has been collected on said judgment, deducting expenses, including the sum of $115, attorney's fees, the sum of $1,221.56, and that there has been paid into court $2,803.45, which, with said sum so collected, makes the sum of $4,025.01, being the same amount with interest and expenses which said Grahams have been obliged to pay in order to secure the title to the premises described in the bill in this cause, and which sum this court decrees to be all the portion of said judgment which under the former decree said complainants are equitably entitled to collect, and as to the residue of said judgment said defendants are enjoined from collecting the same. And it further appearing to the court that said Holloway has paid the said sum of money to the clerk of this court, it is therefore ordered, adjudged and decreed by the court that said Archibald Y. Graham and David Graham be and they are hereby perpetually enjoined from all proceedings

on their said judgment; and that they are further ordered to enter satisfaction of their said judgment on the records of this court. That the said complainant pay the costs of this case made prior to the present term of this court, and that said defendants pay the costs of this term."

From that decree the defendants below prosecuted this appeal.

Messrs. GEORGE F. HARDING, T. G. FROST and JOHN J. GLENN, for the appellants.

Messrs. GOUDY & CHANDLER, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

Appellants insist upon a reversal in this case on several grounds, but, after the most careful examination of the facts in the case, and after an attentive consideration of the elaborate arguments and petition for a rehearing, we are unable to see but one question requiring consideration. The whole controversy turns upon the question whether the agreement for the sale of the land by appellee and Boggess to appellants had been fully terminated for all purposes when the land was sold by the master under the Alexander decree.

As a general rule, a breach of contract by one party absolves the other from a performance of its terms and conditions. When such a breach occurs, the other party is at liberty to rescind the agreement. And he may manifest such an intention in a variety of modes, one of which is by suing and recovering damages sustained by the breach. It then follows, that, when appellants sued for and recovered damages for a failure to convey, they thereby rescinded the contract of purchase. They, by suing upon the covenants contained in the bond, precluded themselves, until the contract was renewed, from insisting upon any of its terms or conditions.

It is, however, true, that such an agreement may, like all others not prohibited by law, be renewed, and thenceforth it

would be restored to its former vigor. And such a renewal may be evinced by an express agreement of the parties, or by acts which establish an intention to give it new force and effect. Every day's observation teaches us that such renewal or waiver of the breaches of contracts, by one or both parties, are of frequent occurrence. And when such breaches are waived or the contract is renewed, it is then enforced precisely as if it had never ceased to be obligatory. This is so plain a rule of law, that a reference to authority is unnecessary to sustain the principle.

We see in this case, that, after Alexander had filed his bill to subject the land to the payment of the balance of the purchase money due him, appellants filed a cross-bill asking relief. In it they set up and relied upon their purchase from appellee and Boggess; that they had paid the purchase money in full; had entered into possession of the land as purchasers, and had made valuable improvements, and claimed equitable relief as purchasers. They prayed that time be given appellee and Boggess to pay the money, and, upon their paying it, that the premises be conveyed to them in fee. This equity they claimed as purchasers, and not as judgment creditors. It seems they could not have successfully claimed, in the latter capacity, as a large number of others were judgment creditors, having prior liens, and who had also been made parties to the bill. This clearly and unmistakably manifested an intention on their part to claim as purchasers and not as creditors.

Had they claimed in the latter right, they would not have asked that the land be conveyed to them in fee. And had they regarded the contract rescinded, for all purposes, they would not have claimed the land in fee subject only to Alexander's lien. They would have been compelled to admit that their co-defendants had prior judgment liens, entitled to preference in the fund arising from the sale of the land. Appellee and Boggess, in their answer to the cross-bill, insisted that the contract was rescinded, and that appellants only had the rights of judgment creditors. But, on the hearing in Alexander's suit, the court recognized the existence of the contract of purchase, by

decreeing, that, in case appellee and Boggess should pay Alexander, or if appellants should pay him and would release their judgment, except such sum as they might pay Alexander, then the land should be conveyed to them in fee. This undeniably established their rights as purchasers, and concluded all parties to that record from controverting it.

It is urged, however, with great apparent earnestness, that, notwithstanding the contract had been rescinded and merged in a judgment, appellants still retained an equitable lien as purchasers of the premises; that they had this special lien by virtue of their former contract of purchase, and were thus connected with the land by that link, and had, therefore, an equitable right to have their judgment satisfied out of the proceeds against senior judgment creditors, by reason of the nonperformance of the contract by appellee and Boggess. This seems to be the basis of all that appellants now claim for a reversal. This does not seem to consist with the prayer of their cross-bill, in which they claimed the fee to the land, and prayed a conveyance after Alexander should be paid. Nor does it accord with the decree which the court then rendered. They have acquiesced in the decree, having, so far as this record discloses, never sought to have it reversed, and we may conclude that they regarded it to their interest to permit it to remain in force.

It will hardly be contended that, if appellee and Boggess had paid Alexander, and he had conveyed to appellee, they could still have proceeded to collect their judgment. That would have violated every principle of equity and common justice, and yet they asked for and obtained a decree for such a conveyance, in case the money was so paid. We can hardly suppose that they believed, when they asked such a decree, that if they thus obtained the title, they could still proceed to collect their judgment.

We are at a loss to comprehend how a party may claim as a purchaser, and insist upon such a relation at one time, and for one purpose, and at another time and for another purpose ignore the relation of vendor and vendee, and claim the rights

of a judgment creditor. But it is insisted, that, although that relation had ceased, although the contract was at an end and merged in a judgment, still they were purchasers in equity so far as to follow their money into the land, and obtain it in preference to the claims of others doubtless as legal and just as theirs. While their claim is just, we do not understand, that, because their judgment was for money paid for the land, it thereby is any more equitable, that they should be preferred, after abandoning the agreement, than other legal demands which had been reduced to judgments and become prior liens upon the land.

We are aware of no principle in equity which gives a purchaser priority, who has abandoned his contract of purchase, and resorted to his remedy at law, for a breach of the agreement, over other judgment creditors of a prior date. If such an equity exists, it can only be because the relation of vendor and vendee exists. And when they claim and obtain all of the benefits incident to the relation of vendees, they are compelled to extend the same rights to their adversary.

Appellants said, in their cross-bill, "We are purchasers of appellee and Boggess, we have paid the purchase money, and are therefore entitled to the land when the prior incumbrance is removed;" and the chancellor recognized and established that claim. How then can they now say, they were not entitled to those rights, but to other and different rights? How can they say they were strangers to the property, and may so deal with it?

It is urged that appellants had a right to insist that the judgment should be satisfied out of the sale of the land in preference to all others but Alexander. They so insisted in their cross-bill, but it was not recognized by the decree. It found that they had the rights of purchasers, and that, if they obtained the land without further expenditure of money, their judgment should be satisfied. They have obtained the land, and the amount paid by them to extinguish Alexander's lien has, with interest, been brought into court, and awaits their receipt. They then have the land at precisely what they paid

for it,—no more, no less. In what, then, does their right consist, to prevent them from being compelled to satisfy their judgment?

The decree in the Alexander suit authorized them to use their judgment on their bid, if they should become the purchasers, beyond the amount of Alexander's decree. They had the legal right to bid and become the purchasers at the master's sale, but did not have the right to apply their judgment in paying the master, unless authorized to do so by the court. And the decree further required, that, if they should purchase, the master should bring the deed into court. Why this requirement? Evidently, that they might be compelled to satisfy so much of their judgment as remained over the sum they should pay to extinguish Alexander's lien. The chancellor could never have intended, when he required the master to receive their bid over and above the amount of Alexander's decree, to give them the benefit of their judgment in paying for the land, and still to permit them to collect their judgment. That would be inequitable and unjust.

Had they become the open and visible purchasers of the land, equity would have required them to satisfy their judgment, for the sum above the amount necessary to extinguish the prior lien, as we have seen. And, as a person is not permitted by indirection to do that which the law forbids him to do directly, they obtained no advantage by employing Lafferty to purchase the land, at the master's sale, in his own name, but on a secret trust for them. They could not, in that manner, evade the decree. Had they purchased in their own names, it would have been subject to the terms of the decree. This they seem to have understood, and hence the apparent effort to evade it, by having a secret agent to purchase for them. They are as fully estopped from denying that they purchased under the decree, as they would have been had they bid in person. Nor did the conveyance by Lafferty to Moir, to hold for them, in the least change the relation or rights of the parties.

Again, appellants were in possession of the land, having

entered under their contract of purchase from appellee and
Boggess.  They do not seem to have offered to restore it to
their vendors, when they sued on the bond for a conveyance.
They, no doubt, desired to hold and enjoy the benefits of
the purchase, so far as was necessary to protect their interests,
and, this being so, they must extend to their vendors correspond-
ing rights.  In other words, if they claim the benefits of the
agreement, they must extend to their vendors the benefits of
the contract.  As a general rule, a party who elects to rescind
an agreement, must restore to the other what he has received
under it; especially so, when he relies upon compensation in
damages for a breach of the contract.  Had they restored the
possession of the property, appellee and Boggess would then
have had it in their power to have disposed of it to relieve
themselves from the judgment appellants had recovered, to the
extent of the surplus over Alexander's lien.  But its value
would have been depressed in market, had they offered it for
sale, from the fact, that appellants were holding it under their
purchase.

It would be highly inequitable to permit appellants to hold
the property and all the benefits resulting from the agreement
when in force, and at the same time exclude appellee from all
of its benefits,— to treat them for some purposes as vendees, and
for other purposes as strangers to the transaction.  They have
obtained the land at the price at which they purchased, and we
cannot perceive in what respect they have been deprived of
any right, or have sustained any loss; and, without one or the
other, it is difficult to comprehend in what their equity con-
sists.  To permit them to enforce their judgment, they would
obtain the land at about $3,000, not exceeding one-third they
paid for it, and collect back the purchase money, equal to the
entire amount which they have expended.

But, appellants having procured the decree under their cross-
bill, and it still remaining in full force, and having purchased
under it, they must be bound by it.  Appellants having failed
to enter satisfaction of their judgment, upon appellees bringing
the money into court necessary to reimburse them, the court

below did right in rendering the decree appealed from, and it must be affirmed.

*Decree affirmed.*

Mr. Justice LAWRENCE, having heard the case in the court below, took no part in this decision.