(2 Misc. Rep. 361.)

HURST v. TROW'S PRINTING & BOOKBINDING CO. et al., (two cases.)

(Common Pleas of New York City and County, General Term. February 6, 1893.)

1. CONTRACTS—RESCISSION BY PARTIES—PARTIAL PERFORMANCE.
    Plaintiff and defendant L. entered into an agreement providing that L. was to have the exclusive right to have impressions printed from certain plates owned by plaintiff for a certain period, and that plaintiff, during the same period, was not to publish any works competitive to those covered by the agreement. As a consideration, L. gave plaintiff a series of promissory notes payable at certain times, and indorsed by the other defendants. Default having been made in the payment of certain of these notes, plaintiff notified L. that he rescinded the agreement, and returned to him all notes maturing after such rescission. Plaintiff, up to the time of rescission, had fully performed his part of the agreement. *Held,* that the rescission related only to the unfulfilled part, and not to the entire agreement, and L. was liable on the notes maturing before the rescission. Pryor, J., dissenting.

2. SAME—LIABILITY OF INDORSERS.
    In such case the rescission of the agreement did not release the indorsers of such notes from liability on the notes maturing before the rescission.

3. SAME—RELEASE OF INDORSERS.
    Nor will the fact that, after the maturity, plaintiff notified L. that, unless the notes were paid at a certain time, he would rescind the agreement, release the indorsers from liability on the matured notes; such notification not being an extension of time.

Appeal from trial term.

Two actions by Thomas D. Hurst against Trow's Printing & Bookbinding Company, John W. Lovell, and Edward Lange. From a judgment for plaintiff in each action, entered on a verdict directed by the côurt, and from orders denying motions for a new trial, defendants appeal. Affirmed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Carter, Pinney & Kellogg, (Frederick R. Kellogg, of counsel,) for appellants.

Andrew Gilhooly, for respondent.

BOOKSTAVER, J. The two actions were tried together and were founded upon two promissory notes given by John W. Lovell under an agreement between himself and the plaintiff which provided, among other things, that, during the period of three years after the date of the contract, Lovell was to have the exclusive right to have impressions printed from certain plates belonging to Hurst, and that during the same period the latter should not publish, directly or indirectly, any works competitive to those covered by the terms of the contract; and for these exclusive rights the agreement provided that Hurst should receive the sum of $90,000, for which sum Lovell should give him 36 negotiable promissory notes, each for $2,500, payable at intervals of one month, respectively, each to be drawn to the order of Trow's Printing & Bookbinding Company, to be indorsed by them and by the defendant Lange. The agreement also provided that this sum of $90,000 was intended not only to include the right to use the plates, but also a consideration for the relinquishment of competing business, and that, if the plates were destroyed before the termination of three years, it should not be considered as abating the payment of any portion of this sum. The agreement further provided for the purchase by Lovell of a large amount of book stock and sheets, and that Lovell should be bound at the end of the three years, or at such earlier time as he might desire, to purchase all the plates covered by the contract for the sum of $75,000 in addition to the $90,000 before mentioned, and that, from the making of said purchase, Hurst should become bound to refrain from entering into any competing business for 25 years after the date thereof, with certain exceptions. Under this contract the 36 notes provided for in the agreement were delivered to the plaintiff, each made by Lovell, and indorsed by the defendants, as provided for in the agreement. Subsequently 15 of these notes fell due, and were paid at maturity, but the sixteenth and seventeenth notes of the series, which are the ones in suit in these actions, were not paid, as was also the case with 6 others falling due thereafter. After the delivery of these notes to the plaintiff, he transferred the two in question to Samuel J. Kerr, by whom these actions were originally commenced, but subsequently, in December, 1891, the notes were taken up by the plaintiff from Kerr, and he again became their sole owner, and remained so down to and including the time of the trial. On March 9, 1892, there being at the time seven

notes of this series unpaid, including the two now under consideration, Hurst sent the following letter to Lovell:

"Law Office of Andrew Gilhooly, Temple Court Building, 5 Beekman Street.
"New York, March 9th, 1892.

"John W. Lovell, Esq.—Dear Sir: Your nonpayment of your note for $2,500, payable March 7th, 1892, under our contract of March 4th, 1890, is a breach of condition on your part, and, in view of the repeated defaults on previous notes, I cannot let it pass.   I hereby give you notice that your rights under the contract depend on the due payment of the obligations therein referred to, and the performance of the conditions therein named on your part; and these must hereafter be promptly made and performed by you.   If the above note, dishonored on the 7th inst., is paid without further delay, and no further default occurs, I am prepared to waive any claim 1 may have to rescind the contract; otherwise, I shall enforce my right to do so.
"Yours, &c.,                                              Thomas D. Hurst."

On April 4th, Hurst reiterated the statements contained in that letter by another of that date, and on April 9, 1892, the note of April 7th having gone to protest, signed a letter prepared by his lawyer, which is as follows:

"Law Office of Andrew Gilhooly, Temple Court Building, 5 Beekman Street.
"New York, April 9th, 1892.

"John W. Lovell, Esq.—Dear Sir:  Referring to my written notice to you, bearing date March 9th, 1892, notifying you that I should enforce my right to rescind my written contract with you, dated March 4th, 1890, in case your note for twenty-five hundred dollars, payable March 7th, 1892, under said contract, was not paid without delay, or in case any further default occurred on your part in the performance of the said contract, I now notify you that in view of your continued default in the payment of said note for twenty-five hundred dollars, payable March 7th, 1892, and of your repeated and continued defaults in the payment of previous notes given under said contract, and your default in the payment of your note for twenty-five hundred dollars, payable March 7th, 1892, under said contract of March 4th, 1890, I hereby terminate and rescind my said written contract with you, bearing date March 4th, 1890, and herewith return to you eleven notes given under said contract of March 4th, 1890, for the sum of twenty-five hundred dollars each, dated March 4th, 1890, and payable to the order of Trow's Printing and Bookbinding Company, at 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 months, respectively, after date.
"Yours, etc.,                                            Thomas D. Hurst."

Inclosed in this letter were the 11 notes mentioned therein.   To this letter, Lovell replied as follows:

"New York, April 9th, 1892.

"Thomas D. Hurst, Esq., 134 Grand St., New York—Dear Sir:  I have received your favors of April 4th and April 9th, in regard to our contract of March 4th, 1890, in which you inform me that you rescind this agreement.  I have carefully considered the whole matter, and have concluded to acquiesce in this rescission; and I therefore hereby notify you that I consent and agree that the contract in question shall be, and is, wholly rescinded and annulled.
"Yours, very truly,                                      J. W. Lovell."

Meanwhile, and up to the 9th April, 1892, Hurst had completely performed all of the terms of the above-mentioned agreement on his part to be performed, and Lovell had enjoyed the exclusive use of the plates referred to in the agreement, and Hurst had refrained from publishing the books he had undertaken not to publish.   The 11 notes returned as before stated were all notes maturing after April 9, 1892. The eight notes maturing before that date, then outstanding and unpaid, were retained.   Of these, Hurst, on April 9, 1892, held and

owned five, including the two in question in these actions, which actions were then pending; and the remaining three were in suit by other parties against Lovell and the defendants herein. The foregoing facts appearing at the trial, the court, when all the evidence was in, at the request of the plaintiff, directed a verdict in his favor for the full amount of the notes, with interest, to which the defendants excepted; and this exception raises the only question to be considered upon this appeal.

The direction was made at the close of the evidence, on motion by both parties for the direction of a verdict,—one in favor of plaintiff, and the other for the dismissal of the complaints, and a judgment in defendants' favor; and neither party asked to go to the jury upon any question, thus submitting to the court, for its determination, any questions of fact that may have arisen upon the evidence in the case. This gave to the judge the office of the jury, and brings up the question whether there was sufficient evidence to support the trial judge's decision. Green v. Shute, 7 N. Y. Supp. 645; Gilder v. Davis, 18 N. Y. Supp. 544; Burrows v. Steamship Co., Id. 781; Mayor, etc., v. Sands, 39 Hun, 519, 524. Appellants contend that the rescission of the contract of March 4th discharged both the maker and the indorsers of the notes in suit from any liability thereon. This would be the case if the notices served by Hurst upon Lovell amounted to a rescission, in the ordinary acceptation of that term. Graves v. White, 87 N. Y. 463; 2 Daniel, Neg. Inst. § 1306; Freeth v. Burr, L. R. 9 C. P. 213; Iron Co. v. Naylor, L. R. 9 App. Cas. 434; Mills v. Parkhurst, 126 N. Y. 93, 26 N. E. Rep. 1041; Bish. Cont. § 827; Creighton v. Haggerty, 50 N. Y. Super. Ct. 9; Weeks v. Robie, 42 N. H. 320; Conrow v. Little, 115 N. Y. 394, 22 N. E. Rep. 346; Fowler v. Bank, 113 N. Y. 450, 21 N. E. Rep. 172; and many others which might be cited. The question then arises as to what was really intended by the plaintiff's notice of April 9, 1892. Did he thereby mean that he rescinded the contract ab initio, or only from and after April 9, 1892, the date of the notice? And this depends upon the construction to be given to the words, "I hereby terminate and rescind my said written contract," to be determined in the light of surrounding circumstances.

Good writers often use the word "rescind" in the narrower sense of terminate a contract as to future transactions. Thus, in making a note, at page 145, 28 Abb. N. C., [Strack v. Hurd, 16 N. Y. Supp. 566,] Dr. Abbott says:

"The word 'rescind' is often used, and not improperly used, to mean cutting off. Thus, Bispham (Eq. p. 556, § 506) says a dissolution of the partnership is a 'rescission of the contract,' meaning, of course, a rescission as to future transactions."

The words "rescission" and "rescind" are used simpliciter by the highest authorities to indicate in some cases partial rescission or termination, as well as to indicate in other cases annulment ab initio. Thus, Leake on Contracts (3d Ed. 1892, p. 53) says:

"In a case of money lent under a special contract, which was afterwards rescinded by mutual agreement, it was held that the money still remains due; the rescission relating only to the further execution of the contract."

Fry, J., says in Bluck v. Capstick, 12 Ch. Div. 863, in speaking of the dissolution of a partnership which involved the refusal by defendant, an incoming partner, to pay his bonus or premium after three months' joint conduct of the business, the pretext for his refusal being the allegation that plaintiff had not fairly performed on his part:

"I must have regard to the circumstances which have led to the dissolution of the partnership. * * * The allegation of misconduct on the part of the plaintiff failed, and in my opinion the defendant has, in effect, rescinded the partnership agreement, without any excuse."

And he thereupon went on to decree payment of the premium agreeably to the terms of the partnership; thus showing that the rescinding spoken of was not an absolute rescission or annulment of the partnership ab initio, but a termination or rescission restricted to the future. This is made still clearer by the headnote, which states the case as one "where a partnership is dissolved before its natural expiration," etc., "without payment of the premium, * * * the partner who has agreed to pay it [if his fault is the sole cause of the dissolution] will be ordered to pay the whole of it, notwithstanding the dissolution." In 2 Parsons on Contracts (7th Ed. *677,) we find these words, "and a suit for the recovery of damages for a breach of the contract is equivalent to a notice of rescission;" citing Graham v. Holloway, 44 Ill. 385. In Mann v. Palmer, 3 Abb. Dec. 162, the headnote is: "Acquiescence in the rescission of the executory contract is not necessarily a waiver of an existing claim for profits made under it." Obviously, a single word, like the word "rescind," cannot be wrenched from its context, and construed alone, in its unqualified, strict, and technical sense, in disregard of the surrounding circumstances. To ascertain the import of the notice, the intent must be gathered from the instrument considered as a whole. "It is a cardinal rule in the construction of contracts that the intention of the parties is to be inquired into, and, if not forbidden by law, is to be effectuated. Too much regard is not to be had to the proper and exact signification of words, so as to prevent the simple intention of the parties from taking effect; and, where the language is susceptible of more than one interpretation, the courts will look at the surrounding circumstances when the contract was entered into, the situation of the parties, and of the subject-matter of the instrument." French v. Carhart, 1 N. Y. 102, applied Bridger v. Pierson, 45 N. Y. 604; Kenyon v. Association, 122 N. Y. 258, 25 N. E. Rep. 299. And this rule has been applied even to the interpretation of charters and legislative enactments. McGaffin v. City of Cohoes, 74 N. Y. 387. On the general question under consideration, see, also, Blossom v. Griffin, 13 N. Y. 569; Zimmer v. Settle, 124 N. Y. 42, 26 N. E. Rep. 341.

Under the light of these authorities, we think the circumstances surrounding the making and termination of the contract should be considered. It is undisputed, from the 4th of March, 1890, the date of the contract, down to the 9th April, 1892, Hurst had in all things performed his part of the contract, inasmuch as Lovell had enjoyed the exclusive use of the plates down to the latter date, and Hurst had refrained from publishing, as he agreed, any works in competition to those

mentioned in the agreement. Hence, by virtue of such performance, Hurst had on the 9th April, 1892, earned, and had a vested right of action on, all of said series of notes maturing prior to April 9, 1892, and then unpaid. None of these were returned at the time of giving the notice. Some of them were then in action. Lovell had, in violation of his contract, made default in the payment of eight of the series. In consequence of these repeated defaults on Lovell's part, Hurst was clearly justified on April 9th in terminating the contract, as to its unexpired part, and in holding Lovell, upon his contract and notes given thereunder, for the liability already incurred on his previous defaults. In re Kelly, 51 Fed. Rep. 194; Cunningham v. Railroad Co., 63 Hun, 439, 443, 18 N. Y. Supp. 600; Strack v. Hurd, 16 N. Y. Supp. 566; Gardner v. Clark, 21 N. Y. 399. In giving Lovell notice of such termination of the contract, Hurst was not confined to any particular form of words, so long as their import was to terminate the contract in respect to its unexpired period. If, instead of using the expression, "terminate and rescind," Hurst had written that he had terminated the contract as of the date of the notice, or had coupled with the word "rescind" words showing express reservation of his accrued rights, this would have meant simply that he terminated the contract only as to its unexpired period. McCreery v. Day, 119 N. Y. 1, 23 N. E. Rep. 198; Roe v. Conway, 74 N. Y. 201; Duncan v. Insurance Co., 18 N. Y. Supp. 863. In the light of the surrounding circumstances, has he done anything else than this?

But it is claimed that we must give effect to all the words in the contract. We do this in this case by making the word "rescind" equivalent to the word "terminate," and hence regard it as mere tautology, and synonymous with "terminate." The curious in such matters would see in this no more than a survival of that disposition which draughtsmen exhibited when the fee bill was in part regulated by the folio, and they became expert in the use of a large vocabulary of words having the same or similar meaning, in order to increase the number of folios.

It is quite true, as contended for by the appellants, that as a general rule, where there has been a breach of a contract, the party performing has the right to consider such breach as a basis for rescinding and abandoning the contract, or to treat the contract as subsisting, and sue for the enforcement of the unperformed obligation, and the election to rescind the agreement bars the pursuit of the other alternative. Yet this is so only in cases where the contract is rescinded in toto and ab initio. In such cases he cannot regard the contract as existing, and not existing, at the same time. He must choose between the two. But, as before shown, there are numerous cases in which the party performing the contract on his part may terminate it as to the future, and still hold the delinquent party for its performance up to the time of its termination. In addition to what has been said, we may call attention to the familiar illustration of an ordinary lease for a number of years, where it is provided that the same shall continue for a definite period of time, with installments of rent to be paid monthly. If the

lessee neglects to pay these monthly installments, the landlord may allow the lease to go on to the end, and sue for the whole rent due, or he may at any time, by the commencement of summary proceedings, obtain possession of the leased property, and thus terminate the lease; and yet he may thereafter sue the lessee, and recover for the rent due up to the time of the dispossession. And we have no doubt whatever but that the contract under consideration falls within the latter class of cases.

Again, all the facts in this case were undisputed. If conflicting inferences were to be drawn from these facts, the action of the parties in requesting the court to direct a verdict made it the judge of those inferences, to the same extent that the jury would have been, had not such requests been made; and we think there is quite sufficient in these cases to warrant the judge in drawing the inference he did in favor of plaintiff's contention.

But it is claimed on behalf of appellants that, even conceding Lovell might be held upon the notes due and unpaid at the time of the rescission, the indorsers were thereby discharged, because of the modification of the contract between Lovell and Hurst, inasmuch as the only liability of the defendants to the plaintiff is as sureties for Lovell, the sole party to the contract. It is difficult to see how a cancellation of a contract is a modification of it. The terms of the contract were in no way changed by such termination; and, if Lovell was not discharged from the obligation he incurred before the rescission, we cannot see how his sureties could be. As before shown, all the unpaid notes up to the date of the rescission had been fully earned by Hurst, by the performance of the contract on his part, and Lovell had had all the benefits of the contract up to its rescission; and in our opinion the notes were in the nature of rent for the plates, etc., and the defendants were liable for its payment. We fail to perceive any force in the argument that the defendants were injured by such rescission. On the contrary, it appears to us that it was greatly to their advantage, as in consequence of it they were relieved from a large liability, which, if the contract had been allowed to continue, they or their principal, Lovell, would have had to meet, with nonresulting advantage to the indorsers.

The contention that the sureties were released because of an extension of time granted the principal is not well founded. Such a contention is based solely upon the letters written by the plaintiff to the defendant, which, instead of extending his time to pay the notes, really were intended to press upon him the necessity for immediate payment. The mere failure to sue upon the notes when due never releases the indorser. The judgment should therefore be affirmed, with costs.

BISCHOFF, J., concurs.

PRYOR, J., (dissenting.) I am unable to concur in the prevailing opinion. The notes in suit were given in execution of the agreement of the 4th March, 1890; but that contract was "rescinded" and "annulled" by the mutual consent of the parties, and, by consequence, all

rights acquired under it ceased and determined. A rescission of a contract imports, proprio vigore, a relinquishment of every benefit, and a dissolution of every obligation, dependent upon it; and by the act of rescission each party is restored to his original position and relation. It is a contradiction, in terms, to assert a right under a rescinded contract, and "neither party can thereafter invoke it against the other." McCreery v. Day, 119 N. Y. 1, 23 N. E. Rep. 198; Graves v. White, 87 N. Y. 463, 466; Brewster v. Wooster, 131 N. Y. 473, 30 N. E. Rep. 489; Fullager v. Reville, 3 Hun, 600. By rescission of the contract, of which they were an incident, the notes became incapable of enforcement; otherwise, however, had they been reserved from the operation of the rescission, but of that there is no hint,—the words being, "wholly rescinded and annulled."