ÆTNA CASUALTY AND SURETY COMPANY, Appellant, *v.* THOMAS P. O'CONNOR et al., Respondents.

Second Department, August 3, 1959.

*Joseph Fennelly* (*Gregory A. Lee* of counsel), for appellant.

*Harold M. Harkavy* (*Fred Gerdner* and *Frederick M. Garfield* of counsel), for Perley Hamilton and another, respondents.

No appearance for Thomas P. O'Connor, respondent.

BELDOCK, J. The question involved is whether an insurer, which, before compulsory insurance went into effect, issued an automobile liability policy under the New York Automobile Assigned Risk Plan (hereinafter referred to as the "Plan") has the right to rescind the policy as of the date of its original issuance because of false representations contained in the application therefor, even though the Plan does not give the insurer the right to rescind, but only the right to cancel the policy as of a date 10 days after the notice of cancellation.

Pursuant to the authority contained in section 63 of the Insurance Law (L. 1946, ch. 467), insurers licensed to write motor vehicle liability insurance in this State prepared the Plan, which was thereafter approved by the Superintendent of Insurance, and became effective January 1, 1955. Section 9 of the Plan provides that an applicant who certifies that he has, within the past 60 days, attempted to obtain automobile liability insurance and has been unable to do so, shall be considered for assignment upon making application in good faith to the Plan. Said section 9 further provides: " An applicant shall be considered in good faith if he reports all information of a material nature, and does not wilfully make incorrect or misleading statements, in the prescribed application form, or does not come within any of the prohibitions or exclusions listed below.

" A risk shall not be entitled to insurance nor shall any subscriber be required to afford or continue insurance under the following circumstances:

" (A) If the applicant   *   *   *   habitually disregards local or state laws as evidenced by two or more non-motor vehicle convictions during the immediately preceding thirty-six months."

Section 18 of the Plan provides that a carrier which has issued a policy under the Plan shall have the right to cancel the insurance as of a date 10 days after notice of cancellation if the insured

" (1) is not or ceases to be eligible or in good faith entitled to insurance, or

*   *   *

" (4) has obtained the insurance through fraud or misrepresentation ".

After attempting to obtain automobile liability insurance and failing in his attempt, respondent O'Connor on May 28, 1955 swore to an application for insurance under the Plan. To question 15 (m) inquiring whether at any time during the immediately preceding 36 months the applicant had been convicted for any offenses not arising out of the operation of a motor vehicle, O'Connor answered " no ". That answer was false. Within three years prior to the application, O'Connor on two occasions had been convicted of disorderly conduct and, on two other occasions, of public intoxication.

The application was received by the Plan, which assigned the risk to the appellant. The appellant issued the policy on June 8, 1955 for one year. It is undisputed that said policy was issued by the appellant pursuant to and in accordance with

the Plan as authorized by section 63 of the Insurance Law afore-mentioned.

On March 4, 1956 O'Connor was involved in an accident with the respondents Hamilton. In the course of appellant's investigation of the accident, it discovered the four convictions above mentioned. On April 5, 1956 appellant notified O'Connor that it elected to rescind the policy from its inception and tendered the premium previously paid, with interest. On May 5, 1956 this action for a declaratory judgment was commenced. After trial at Special Term, it was held that appellant had the right to cancel the policy as of a date 10 days after the notice of cancellation because of O'Connor's false representations, but that it did not have the right to rescind the policy as of the date of its original issuance on June 8, 1955. In our opinion, that determination was correct.

The enumeration of certain powers with respect to a particular subject matter is a negation of all other powers with respect to the same subject matter. (*Tucker* v. *Alexandroff,* 183 U. S. 424, 436.) Where one mode of settling disputes is made the subject of express provision by law, such mode is exclusive and is intended to withhold from the disputants the right to adopt proceedings under general provisions applicable to the rights of the public at large. (*Matter of New York, Lake Erie & Western R. R. Co.,* 110 N. Y. 374, 378–379.)

Where an insured obtains insurance through fraud or misrepresentation, the only remedy given by the Plan is cancellation. All other remedies with respect to insurance so obtained are, therefore, negated. The remedy of cancellation must be considered exclusive. Giving the insurers the right of cancellation for fraud signified an intention to withhold the right to pursue the remedy of rescission for fraud, even though other litigants might have that right under similar circumstances. The Plan gives every indication of having been very carefully drafted. The inference is that omitted remedies were intended to be excluded. (Cf. *Behan* v. *People,* 17 N. Y. 516.) Courts may not read into the Plan a right which is not there.

Section 19 of the Plan provides that an insured given notice of cancellation of insurance may appeal such action to the governing committee, whose action may be appealed to the Superintendent of Insurance. The Superintendent's determination is reviewable under article 78 of the Civil Practice Act. (Insurance Law, §§ 34, 63.) It was not the intent of the Plan to provide that the rights of parties should be adjudicated by two independent and, perhaps, conflicting tribunals, namely, the administrative tribunals provided by the Plan and the courts in the first instance

in an independent action like the present. Affirmance of this judgment will render the scheme provided by the Plan consistent, reasonable, and harmonious, and capable of uniform, precise and impartial administration by the tribunals therein contemplated. Furthermore, if rescission by action in equity were permitted, it would materially interfere with the power conferred on the Superintendent to supervise the Plan and with the exercise of his judgment in investigating and determining its operation. This would conflict not only with the terms of the Plan, but would plainly violate its spirit and intent. (Cf. *People ex rel. Killeen* v. *Angle,* 109 N. Y. 564, 570.)

The judgment should be affirmed, with costs.

NOLAN, P. J. (concurring). Apparently the parties have agreed that the policy issued to respondent O'Connor, pursuant to the Plan, should be construed as though the provisions of the Plan were embodied in it, and appellant concedes that, if an insurer were to be permitted to *cancel* a policy issued under the Plan, without cause, in accordance with the cancellation clause contained in the policy, it would defeat the very purpose which the legislation providing for the Plan was designed to accomplish. Appellant asserts, nevertheless, that the provisions of the Plan which permit cancellation of the policy only with respect to future obligations must be construed as leaving unaffected its common-law right to avoid the policy for a material misrepresentation of fact in the application, and in such a case to declare it void *ab initio.* I am in accord with the view that the Plan, read in the light of its declared purposes, does not permit such a cancellation of a policy written pursuant to its provisions.

One of the stated purposes of the Plan is to make automobile liability insurance available to those who have attempted, but have been unable, to procure it, and a duty is imposed on the carrier to which a risk is assigned to afford such insurance except under circumstances specified therein. Additional charges may be made, over and above the rates ordinarily charged for such insurance, in cases in which the applicant has been involved in an accident resulting in damage or injury, has been convicted of specified offenses, or has been required to furnish proof of financial responsibility, and cancellation of the policy is permitted, but only under the circumstances specified in the cancellation provisions of the Plan. Notice of the facts in support of a cancellation is required to be given 10 days prior to the effective date thereof, to the manager of the Plan and the Superintendent of Insurance, and such cancellation may be reviewed on appeal by the governing committee administering

the Plan, and the Superintendent of Insurance, whose order is subject to review pursuant to article 78 of the Civil Practice Act. Cancellation is effective on the date specified in the notice, and *coverage ceases on such date.*

Whatever may have been the intention of the insurers who participated in the formation of the Plan, the provisions to which they agreed do not appear to be consistent with the right which appellant now claims, to annul the policy issued to respondent O'Connor *ab initio.* If the Plan is to be considered part of the policy, the question to be determined is not what the technical meaning of the word '' cancel '' may be as used by insurers, in providing for the termination of insurance coverage. The question is whether the average man in applying for insurance under the Plan would ascribe to the language of the cancellation provisions the meaning which appellant here urges, and would differentiate between cancellation, as meaning the termination of the insurance coverage on a future date stated in a cancellation notice, and rescission, as meaning annulment *ab initio.* I do not believe that he would. In determining the meaning of the language used in the cancellation provisions of the Plan and how such provisions would be understood by the average man, we may consider the accepted meanings of the words '' cancel '' and '' rescind ''. To cancel is '' To annul or destroy; to revoke or recall '', and to rescind is '' To abrogate; annul; cancel ''. (Webster's New Int. Dictionary [2d ed.]; cf. *Matter of Otterbein* v. *Babor & Comeau Co., 272* N. Y. 149.) According not only to dictionary definitions but also to accepted usage in the legal profession, the words '' cancellation '' and '' rescission '' are frequently regarded as interchangeable. (Cf. *Hurst* v. *Trow Print. & Bookbinding Co.,* 2 Misc. 361, affd. 142 N. Y. 637; *New York Life Ins. Co.* v. *Miller,* 17 Misc 2d 532; see 12 C. J. S., Cancellation of Instruments, § 5, p. 945.) It is immaterial that, among insurers, the word '' cancel '' may have a more restricted meaning, nor is it enough that an applicant for insurance might construe it according to the meaning urged by appellant, provided it can reasonably be construed otherwise. To sustain the construction urged, the insurer has the burden of establishing not only that the words used are susceptible of that construction, but also that it is the only construction that can fairly be placed on them. (*Bronx Sav. Bank* v. *Weigandt,* 1 N Y 2d 545; *Hartol Prods. Corp.* v. *Prudential Ins. Co.,* 290 N. Y. 44, 49.) In my opinion, the Special Term properly construed the Plan as prohibiting the termination of insurance coverage provided by policies issued thereunder, or the annulment of such policies except in accordance with its

cancellation provisions, and I believe the average applicant for insurance would so construe the language used. Moreover, such appears to be the intent of the Plan, when all of its provisions are considered. It does not seem probable or reasonable that it was intended that an attempted termination of insurance coverage by a cancellation notice effective after 10 days should be subject to review by appeal and that an insurer should nevertheless be free of supervision and control by the governing committee administering the Plan and the Superintendent of Insurance, if it terminates the coverage by declaring the policy void *ab initio* (cf. *Matter of Aioss* v. *Sardo,* 223 App. Div. 201, affd. 249 N. Y. 270).

The judgment appealed from should be affirmed.

UGHETTA, J. (dissenting). In this action for a declaratory judgment appellant seeks to rescind an automobile liability insurance policy on the ground that it had been procured through fraud and misrepresentation of a material nature. The policy had been issued to the respondent O'Connor, and before rescission was attempted he had been involved in an automobile accident with the respondent Perley Hamilton, inflicting serious bodily injury upon said respondent Hamilton.

The facts are undisputed, as is essentially the appellant's right to this relief had the insurance policy in question been sought and issued voluntarily. The trial court indicated that if this had been so, the relief sought would have been granted. However, difficulty arises because the policy issued to the respondent O'Connor was obtained through the New York Automobile Assigned Risk Plan (hereinafter referred to as the Plan). The question now presented is whether the terms of that Plan, which provide to an insurer induced to issue a policy by such fraud or misrepresentation the remedy of cancellation, exclude by implication the equitable remedy of rescission.

It is the position of appellant that in the absence of statutory prohibition its common-law right to equitable relief for fraud remains unchanged by the terms of the Plan. On the other hand, the respondents Hamilton urge that the intent and practical application of the Plan requires a determination that the appellant's only relief is cancellation.

A loss had occurred during the policy period for which the appellant might well be liable unless it can void the policy from its inception. The only legislative sanction for the Plan is found in section 63 of the Insurance Law. That section provides that all licensed motor vehicle liability insurers shall participate in the equitable apportionment amongst themselves of applicants for insurance who are in good faith entitled to such insurance

but are unable to obtain it through ordinary channels. In addition to authorizing the Superintendent of Insurance to approve a plan which would accomplish this purpose, this section also made provision for either applicant, insured or insurer, to appeal to the Superintendent from any ruling or decision of the manager or committee designated to operate the Plan. Finally, the Superintendent's rulings were made subject to judicial review.

On this authority the Plan was established and was in effect when the policy issued to O'Connor pursuant to the terms and procedures of the Plan. That O'Connor from the beginning was not entitled to the insurance is hardly in dispute. Section 9 of the Plan established the qualifications of those entitled in good faith to obtain insurance under the Plan, as follows:

"As a prerequisite to consideration for assignment under the Plan, an applicant must certify, in the prescribed application form, that he has attempted, within 60 days prior to the date of application, to obtain automobile bodily injury and property damage liability insurance in the State and that he has been unable to obtain such insurance.

"An applicant so certifying shall be considered for assignment upon making application in good faith to the Plan. An applicant shall be considered in good faith if he reports all information of a material nature, and does not wilfully make incorrect or misleading statements, in the prescribed application form, or does not come within any of the prohibitions or exclusions listed below.

"A risk shall not be entitled to insurance nor shall any subscriber be required to afford or continue insurance under the following circumstances:

"(A) If the applicant or anyone who usually drives the automobile is engaged in an illegal enterprise, or has been convicted of any felony or high misdemeanor during the immediately preceding thirty-six months or habitually disregards local or state laws as evidenced by two or more non-motor vehicle convictions during the immediately preceding thirty-six months."

That O'Connor had been convicted on four separate occasions for disorderly conduct and public intoxication during the 36 months preceding his application for insurance was so amply proved at the trial that it seems clear that he was not in " good faith entitled to insurance ", nor was any subscriber to the Plan " required to afford or continue insurance." Had O'Connor in his application made truthful answers to the questions designed to elicit a history of convictions, he would have undoubtedly

been denied the insurance. In short, by his misrepresentations he obtained that which would have been denied to the honest applicant. To hold, therefore, that O'Connor's policy, fraudulently obtained, remains valid from issuance, although the fraud was detected and the policy was cancelled, would create an anomalous situation which ought not be permitted when the innocent party objects unless such was clearly the intent of the Legislature or of the contract between the parties.

The policy of insurance did not contain the terms of the Plan. However, whether by force of law or the act of the parties, it is not disputed that the terms of the Plan, where applicable, are determinative of the rights and obligations of each. Even though the policy itself contained a cancellation clause which permitted cancellation by either party without cause, by dealing with each other pursuant to the Plan it was obviously the intention of both to restrict cancellation to the method outlined in section 18 of the Plan, as follows:

"A carrier which has issued a policy or binder under this Plan, shall have the right to cancel the insurance by giving notice as required in the policy or binder if the insured

"(1) is not or ceases to be eligible or in good faith entitled to insurance, or

"(2) has failed to comply with reasonable safety requirements, or

"(3) has violated any of the terms or conditions upon the basis of which the insurance was issued, or

"(4) has obtained the insurance through fraud or misrepresentation, or

"(5) has failed to pay any premium due under the policy.

"Each such cancellation shall be on a pro rata basis, subject to the minimum charge of $10.00 per car, and a copy of each such cancellation notice shall be furnished to the producer of record. A statement of facts in support of each such cancellation shall be furnished to the Manager, and, except in the case of cancellation for nonpayment of premium, to the Superintendent of Insurance of the State, ten days prior to the effective date of cancellation.

"Cancellation shall be effective on the date specified and coverage shall cease on such date."

Respondents Hamilton urge that this provision was an insurer's exclusive remedy in the event that it had been induced to issue a policy by fraud or misrepresentation. In support of this contention they argue that the terms of the Plan must be deemed incorporated in the policy. Hence the authors of the Plan, the insurers, by making specific reference to cancellation

in the event of fraud or misrepresentation recognized that possibility and by remaining silent as to rescission provided an exclusive remedy. Any other interpretation, it is urged, would render meaningless the right of appeal provided by section 63 of the Insurance Law and section 19 of the Plan.

In contemplation of law, were rescission and cancellation equivalent remedies, this argument would be persuasive. It is to be noted that respondents Hamilton do not claim the remedies are the same. Hence, the difficulty with said respondents' position lies in the fact that the common-law right of rescission and the contractual right of cancellation are different, independent and distinct remedies. The former finds its origin in equity, while the latter exists only if provided for by the parties themselves, either specifically in the contract or by necessary reference when the contract itself is sought and issued under a master plan to which the parties consented.

That an action for rescission to void a policy of insurance *ab initio* for fraud is well founded and of long standing seems beyond dispute. Indeed, section 149 of the Insurance Law, which concerns itself, *inter alia*, with misrepresentations and their materiality, has been enacted for the very purpose of restricting such actions to those wherein the misrepresentation directly induced the issuance of the policy. While such actions are more common in the life insurance field, equivalent actions wherein the subject matter was motor vehicle liability insurance are not hard to find (*Hartford Acc. & Ind. Co.* v. *Breen,* 2 A D 2d 271).

The distinction, of course, is of vital importance, since where rescission is sought the court will insofar as possible return the parties to the status they enjoyed at the inception of the voided contract and will determine the rights and obligations of each as though there never had been a contract in the first instance. On the other hand, cancellation of an insurance contract presupposes that, however short the duration, there was in existence a valid policy which is to be terminated according to the terms of the contract. There can be no termination of a contract which had no beginning. The distinction is neither new nor novel. Webster's New International Dictionary (2d ed.) makes specific reference to the meaning of the word "rescind" as applied to the law of contracts: "In the law of contracts the technical rescinding of a contract avoids the contract ab initio and requires that both parties be put as far as possible in the same position as before making the contract."

Section 9 of the Plan enumerates four classes of applicants who are disqualified from obtaining insurance under the Plan.

They are applicants engaged in illegal enterprises, applicants convicted of one felony or high misdemeanor during the preceding 36 months, applicants who habitually violate local or State laws as evidenced by two or more " non-motor vehicle convictions ", and, finally, applicants twice convicted of specified motor vehicle violations. O'Connor came squarely within the third category.

Nowhere in the Plan is there expressed any intention to waive these exclusions unless it be found in the provision that the insurer had a right to cancel if the insured " is not or ceases to be eligible or in good faith entitled to insurance " or " has obtained the insurance through fraud or misrepresentation ". In this case the cancellation clause of the Plan does not in and of itself use language restricting the remedy for fraud or misrepresentation to that of cancellation. Any such holding must, therefore, be founded upon what can be gleaned of the intent of the parties in entering into such a contract and the intent of the Legislature in approving such a plan.

All of the five conditions enumerated in section 18 of the Plan, any one of which must exist to permit the carrier to validly exercise the right of cancellation, also contemplate the existence of a valid policy of insurance for some period of time, however short. Therefore, cancellation is an appropriate remedy when subsequent events during the policy period give rise to that right, and an insurer which had partially performed would be entitled to a partial premium for the period of the life of the policy before cancellation.

The fraud or misrepresentation outlined in the fourth condition in section 18 of the Plan is not otherwise defined and a scrutiny of the application for insurance (Exhibit 1) shows that there were representations made by the respondent O'Connor which provided the opportunity for misrepresentation and yet were not concerned with the four classes of applicants who were not qualified under any conditions to apply for and obtain insurance under the Plan. Clearly therefore the parties did not intend to use the word " cancellation " in any way as the equivalent of rescission. This is further confirmed by reference to the provisions for charging premiums which were always to be either a minimum of $10 or prorated if the premiums earned exceeded that amount.

Only the first condition in section 18 of the Plan contemplates cancellation of a policy wherein the applicant in the first instance was not eligible for, or in good faith entitled to, insurance. In such instance the assured can hardly be aggrieved, since he had agreed to give the insurer the " right to cancel " which plainly

imports a unilateral right of election. In the event the right is not exercised and the insurer elects instead to rescind, the insured again can hardly complain when he is deprived of that to which he had no right in the first instance.

It goes without saying that the right to rescission must be exercised in good faith and promptly upon learning the facts, and these factors are of course subject to the closest scrutiny, particularly when a loss has occurred before the attempted rescission. Except for the fact that a loss has occurred to innocent parties who had nothing to do with the misrepresentation, there would be nothing unreasonable about giving to an insurer the right to cancel at some period during the life of the policy and retain a prorata share of the earned premium. This would be true even where the insurer had good grounds for voiding the policy *ab initio* by refunding all the premium and pursuing a plenary suit for rescission.

In step with the constantly increasing use of motor vehicles, the Legislature and the courts of the State of New York have constantly enlarged the protection accorded to innocent victims of motor vehicle accidents. Conversely, there has been ever-increasing restriction on the right of an insurance company to void its obligation to pay a loss because of any act or omission by the insured which would have precluded recovery by those whose claims against the insurer were wholly derivative. (*Lauritano* v. *American Fid. Fire Ins. Co.*, 3 A D 2d 564.) However, this very awareness on the part of the Legislature of this problem and its willingness to act in similar situations should logically require caution in finding any such purpose where the Legislature has not spoken.

Article 6-A (now renum. 6-B) of the Vehicle and Traffic Law, entitled "Motor Vehicle Safety-Responsibility Act" and section 167 of the Insurance Law are examples of legislation designed to limit this common-law right of rescission where overwhelming dictates of extending protection to the public so require. Section 167 did so by enlarging and liberalizing the requirements as to notice contained in policies issued in this State. Section 94-q of article 6-B did so by withdrawing from the insurer its common-law right to defeat or void the policy up to the limits provided in the article, for violation of the terms of the policy, and made absolute the liability of any company upon the occurrence of a loss.

The Safety-Responsibility Act had for its purpose the protection of the general public using the highways by eliminating certain classes of operators, by requiring production of evidence of financial responsibility in event of injury to others.

(*Shuba* v. *Greendonner,* 271 N. Y. 189.) It fell short of making insurance compulsory. However, with the enactment in 1956 of the present article 6-A of the Vehicle and Traffic Law entitled the " Motor Vehicle Financial Security Act " (eff. Feb. 1, 1957), the Legislature virtually accomplished this when it provided that no motor vehicle could be registered in the State of New York unless proof of financial security in the form of an approved policy of insurance or otherwise was furnished. Hence resolution of the question in favor of the respondents is negated rather than aided by a study of the enactments of the Legislature dealing with motor vehicle liability insurance.

Heretofore the Legislature has shown an awareness of the problem and a disposition to deal affirmatively with it. Most significantly, at the time it enacted what was virtually a compulsory liability insurance law, it refused to make policies issued thereunder nonvoidable. The Plan, while approved by the Legislature, still remains virtually voluntary except for the inherent compulsion that any insurer writing automobile liability policies in this State must subscribe to the Plan.

No sound reason has been advanced why rights which were not abrogated in a compulsory insurance law should be abrogated by an attempt to find such a legislative purpose and intent in a voluntary insurance program. In short, only in the terms of the Plan, if at all, can any basis be found for the contentions of the respondents Hamilton. However, the arguments advanced must fail, for they all assume the basic error that rescission and cancellation are the same remedy.

Assuming that the terms of the Plan have the force of law does not aid the respondents, for then the general rule that statutes changing the common law must be strictly construed comes into play. (*Matter of Town of Cheektowaga,* 259 App. Div. 141; *Matter of Ryan,* 291 N. Y. 376.) Nothing in section 63 of the Insurance Law or in the Plan itself provides any basis for inferring that the Legislature intended to abrogate the right to rescind, particularly when the distinction between rescission and cancellation is borne in mind. The general rule that enumeration of certain powers is a negation of all other powers necessarily has application when the powers concern the same subject matter. When the subject matter is different, the logic behind the rule fails.

The objection that the appellate procedures outlined by section 63 might conflict or overlap with the usual appellate procedures that might arise from a plenary suit for rescission is difficult to follow. Plenary suits for rescission belong to the courts from inception to conclusion. On the other hand, questions arising,

*inter alia,* out of attempted cancellations are to be handled in the first instance by the administrative processes, subject only to final review by the courts. The line of demarcation seems clear and the potential conflict more apparent than real. Equally illusory is any argument that the higher premium rates charged assigned risks conferred any new right on the part of the insurers to issue such policies. That assigned risks make unwelcome insureds despite the rate is well known.

Also to be noted is that the Plan itself in section 16, while it did provide a graduated rate depending on the extent of the accident and motor vehicle violation history of the applicant, refrained from establishing a rate for risks with the conviction history of the respondent O'Connor.

The judgment should be reversed, and judgment should be directed as prayed for in the complaint.

WENZEL and HALLINAN, JJ., concur with BELDOCK, J.; NOLAN, P. J., concurs for affirmance in separate opinion. UGHETTA, J., dissents and votes to reverse the judgment and to direct judgment as prayed for in the complaint, in opinion.

Judgment affirmed, with costs.